INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant Below),

v.

The HERTZ CORPORATION, Appellee (Plaintiff Below).

No. 2–882A223.

Court of Appeals of Indiana, Second District.

Dec. 20, 1983.

Rehearing Denied April 10, 1984.

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for appellant.

Leonard J. Betley, Barton T. Sprunger, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

SHIELDS, Judge.

The Indiana Department of State Revenue (Department) appeals the grant of a summary judgment in favor of the Hertz Corporation (Hertz). Among the alternative bases given by the trial court for its judgment was its determination that the purchases of fuel by Hertz were for resale so as to qualify for exemption from gross retail tax and use tax under I.C. 6–2–1–39(b)(9) and I.C. 6–2–1–43 (Burns Code Ed., Repl.1978). Because we affirm the decision of the trial court on that basis, we do not reach the other separate and several bases for the grant of the judgment.

The Department does not attack the validity of the trial court's findings of fact.[1] Therefore, we accept those findings which are, in relevant part,

"1. The Plaintiff, Hertz Corporation ('Hertz'), is a Delaware corporation, qualified to do business in the State of Indiana, and has its principal office located in New York, New York.

"2. The Defendant, Indiana Department of State Revenue ('Department'), is an agency of the State of Indiana and administers the state gross retail tax and use tax imposed by I.C. 6–2–1–37, *et seq.*

"3. At all relevant times Hertz has been engaged in, *inter alia,* the business of renting or leasing motor vehicles through its Rent-A-Car Division and its Truck Division.

"4. Hertz's Rent-A-Car Division engages primarily in the daily rental of automobiles. During the period in question, Hertz's Rent-A-Car Division entered into two types of agreements depending upon whether the customer desired to rent automobiles at rates which included gasoline ('wet' rentals) or at rates which did not include gasoline ('dry' rentals).

"5. If a customer of Hertz's Rent-A-Car Division desired a dry rental, the customer was required to furnish all fuel used during the rental period. All vehicles left the Hertz's premises with a full tank of gasoline. If the vehicle was returned without a full tank of fuel, then pursuant to a rental agreement Hertz imposed a refueling charge upon the customer. The refueling charge was calculated on the basis of the amount of fuel required to fill the vehicle's tank and was separately stated on the rental agreement. At all relevant times Hertz collected gross retail tax on this charge, as well as the mileage and time charges for the rental of the vehicle, and remitted the same to the Department on a timely basis.

"6. If a customer of Hertz's Rent-A-Car Division entered into a wet rental agreement, fuel was provided by Hertz. Under wet rental agreements the "mileage" rate which was charged included a charge for fuel. The 'mileage' rate charged on wet rentals was greater than that on dry rentals, the difference representing the cost to the customer of the fuel provided. Hertz collected gross retail tax from its customers on the entire amounts received from wet rentals, and remitted such tax to the Department on a timely basis.

"7. During the period in question Hertz's Truck Division engaged in basically two types of rentals—daily rentals and long-term leases. The long-term leases during the periods in question were generally for periods over one year and up to five years.

---

1. The Department does argue the trial court made an erroneous, implicit finding of fact when it concluded the bulk purchases of fuel were wholesale sales under I.C. 6–2–1–3(a)(1) or, alternatively, purchases for resale. *See,* Conclusion of Law 3, *infra.* We disagree. These determinations are not findings of fact but, rather, conclusions of law based upon uncontested facts. The trial court determined as a matter of law, based upon undisputed facts, that Hertz's bulk purchases of fuel for the purpose of providing the fuel to its customers constituted wholesale sales or purchases for resale within the meaning of the cited statutory definitions.

"8. The daily truck rentals were almost exclusively dry rentals, *i.e.*, rentals which did not include any charge for fuel. As was the case for dry rental agreements for the Rent-A-Car Division, the Truck Division charged customers for any refueling which was necessary upon the return of the vehicles, based upon the number of gallons required to fill the tank and the prevailing average price for a gallon of fuel. As in the case of dry rental agreements for automobiles, the refueling charge was separately stated on the rental agreements. Hertz collected gross retail tax on both the amounts received for the dry rentals and the refueling charge, and remitted such tax to the Defendant on a timely basis.

"9. Hertz's Truck Division entered into basically two types of long-term leases with its customers, depending upon whether the customers desired to have fuel provided by Hertz or to provide their own fuel. If a customer entered into an agreement under which Hertz provided the fuel, the amounts which Hertz charged the customers included a charge for fuel. Hertz charged gross retail tax to its customers on all amounts received from its long-term leases of trucks, including amounts received as charges for fuel, and remitted such tax to the Department on a timely basis.

"10. With the exception of tax paid by Hertz's Indianapolis office to one of its suppliers, for all the years in question, including years prior thereto, Hertz

did not pay gross retail or use tax in connection with the purchase or use of bulk fuel which it provided to its customers....

. . . . .

"12. Subsequent to the two previous audits of Hertz as set forth in paragraphs 10 and 11 hereof, the Department audited Hertz for Indiana gross retail tax and use tax purposes for the years 1972 through 1976. Among the issues protested by Hertz was the proposed assessment of additional tax with respect to bulk fuel purchases made by Hertz for purposes of providing fuel to its customers. Following a hearing the Department denied Hertz's protest of the imposition of additional tax on bulk fuel purchases....

. . . . .

"14. By check in the amount of $210,-081.82, transmitted to the Department on March 21, 1979, Hertz paid additional gross retail and use tax, penalty, and interest with respect to the audit referred to in paragraph 12 hereof. Of such amount, $80,404.64 is attributable to tax on bulk fuel purchases."

Record at 206–209.

The Department does, however, attack the trial court's conclusion of law [2] that the bulk purchases of fuel are wholesale sales within the meaning of I.C. 6–2–1–3(a)(1),[3] and, accordingly, are exempt from state gross retail and use tax under I.C. 6–2–1–39(b)(9) and I.C. 6–2–1–43.[4] It claims bulk

---

**2.** "3. The Department wrongfully and illegally collected state gross retail tax and use tax from Hertz for the years 1973, 1974, 1975, and 1976, in that the transactions in which Hertz made bulk purchases of fuel from its suppliers for purposes of providing the same to its customers constituted wholesale sales within the meaning of I.C. 6–2–1–3(a)(1) and are exempt from state gross retail tax and use tax under I.C. 6–2–1–39(b)(9) and I.C. 6–2–1–43, or, in the alternative, the transactions in which Hertz acquired such fuel constituted purchases for resale within the meaning of I.C. 6–2–1–38(1)." Record at 210.

**3.** I.C. 6–2–1–3(a) (Burns Code Ed., Repl.1978) provides:

"The term 'wholesale sales' means and includes only the following: (1) Sales of any tangible personal property ... to a purchaser who purchases the same for the purpose of reselling it in the form in which it is sold to him...."

**4.** I.C. 6–2–1–39(b)(9) (Burns Code Ed., Repl. 1978) provides:

"(a) The state gross retail tax shall not apply to ... (9) Sales of any tangible personal property to a purchaser who purchases the same for the purpose of reselling in the regular course of the purchaser's business such tangible personal property in the form in which it is sold to such purchaser."

I.C. 6–2–1–43 (Burns Code Ed., Repl.1978) provides:

purchases are not purchases for resale but rather are purchases of supplies provided by Hertz to its customer.

The Department first argues the subject lease agreement is an indivisible contract under which Hertz has agreed to provide an operational vehicle and that any supplies necessary to fulfill that obligation cannot be properly segregated or separated from the remainder of the contract. We accept that proposition for the purpose of this opinion. *See, Samper v. Indiana Dept. of State Revenue,* (1952) 231 Ind. 26, 106 N.E.2d 797.

The next step in Department's argument is that the gasoline provided by Hertz to its customers is not sold to the customer because there is either no transfer of consideration for the gasoline or there is no transfer of ownership of the gasoline. Therefore, because the gasoline is not sold to the customer, it must be supplied. Consequently, as a supply, Hertz is the consumer of the gasoline and therefore, Hertz's purchase is not tax-exempt.[5]

Department's analysis is faulty. First, the only gasoline in issue is gasoline that has its origin in a Hertz bulk purchase. Any gasoline that is acquired from third parties is not in issue. There are two options available to a customer who leases a vehicle under the subject Hertz lease agreement. The basic agreement concerns the lease of a vehicle. Under both options Hertz bulk purchased gasoline is involved in but two instances. Under one option, denominated the "dry lease," the customer pays for the use of the vehicle. Gasoline acquired during the lease is the customer's obligation and is not in dispute. However, Hertz does refuel the vehicle and imposes a "refueling charge" based on the amount of fuel required to fill the tank if the customer does not return the vehicle fully fueled. This charge is separately stated on the rental agreement and is paid by the customer at the time of, and in addition to, the payment of the lease charge for the vehicle.

The Department's position is the fuel in the tank at the inception of the dry lease is not sold to the customer because there is no consideration for that gasoline. It also argues the "fill up" tank of fuel placed in the vehicle's tank by Hertz if it is returned less than fully fueled is not sold to the customer because there is no transfer of ownership of the fuel to the customer. We disagree.

There is consideration for gasoline in the leased vehicle's tank at the inception of the lease. The "fill up" tank of gasoline, placed in the vehicle by a third party or by Hertz, but in both events paid for by the customer, is the customer's payment in kind, *i.e.*, consideration, for the tank of fuel in the vehicle at the lease's inception. The absolute ownership in the initial tank of gasoline is transferred by Hertz to its customer, is used (consumed) by the customer and consideration is paid therefor to Hertz by the customer. The fact the payment is deferred, as, indeed, is the payment for the use of the vehicle, is inconsequential. So, too, is the fact the consideration is in kind rather than in legal tender or by credit card. The customer has, nevertheless, purchased the initial tank of gasoline he uses.

Turning to the fuel placed in the tank of the vehicle by Hertz if it is returned less than fully fueled, we also disagree with the Department's argument that because the customer does not use that gasoline there is no transfer of ownership of it to the customer and consequently there is no sale.

---

"The use tax shall not apply to the ... use [of property] ... to the extent exempt, from the state gross retail tax under subsection (b) of section 39...."

The Indiana gross retail tax and use tax law was recodified in 1980 and 1981. Because the transactions in question occurred prior to 1980, all citations are to the prior law.

Though our discussion focuses on the sales tax, it is equally applicable to the use tax.

5.  45 I.A.C. 2-2-20(D) reads:

"Supplies furnished with leased property. A person engaged in the business of renting or leasing tangible personal property is considered the consumer of supplies, fuels and other consumables which are furnished with the property which is rented or leased."

The customer does use the fuel. He uses it, not to propel the vehicle, but as the deferred payment of the amount owed Hertz for the customer's purchase of the tank of gasoline at the inception of the lease. In other words, use is not limited to consumption but rather includes the concept of purpose.

The other lease option is denominated a "wet lease" agreement. Under this option the lease rate is greater than under a dry lease, the difference between the wet lease and the dry lease representing the cost to the customer of the fuel provided. Under this option the gasoline consumed by the customer during the lease is Hertz's obligation. However, with the exception of the gasoline in the tank at the inception of the lease, Hertz's bulk fuel is not involved. Rather, the customer purchases gasoline he consumes during the lease as needed from third parties and is reimbursed by Hertz for the expenditures at the end of the lease.

The fuel in the tank at the wet lease's inception is Hertz's bulk fuel stored in the vehicle's tank. However, that fuel is sold to the customer. There is, contrary to the Department's argument, both consideration and consumption by the customer. The consideration is the increased wet lease per mile charge over the dry lease per mile charge which "represents the cost to the customer during which the vehicle is propelled by that initial tank of gasoline." Consequently, that increased rate is the consideration for the initial tank of fuel. Obviously, the customer is using the fuel even in the narrow sense of the word proposed by the Department. The customer is "consuming" the initial tank of fuel to propel the vehicle.

Judgment affirmed.

BUCHANAN, C.J., and SULLIVAN, J., concur.