**INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and the Water Pollution Control Board, Defendants–Appellants,**

v.

**AMAX, INC. (Through AMAX Coal Company, a division); Cumberland Leasing Company; State Street Bank and Trust Company, and Squaw Creek Coal Company, Plaintiffs–Appellees.**

No. 29A02–8804–CV–00140.

Court of Appeals of Indiana, First District.

Nov. 2, 1988.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

G. Daniel Kelley, Jr., Barton T. Sprunger, Ice Miller Donadio & Ryan, Indianapolis, for plaintiffs-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

State agency appeals from judgment in favor of taxpayer coal company in an action for allowance of certain personal property tax exemptions. We affirm.

## FACTS

AMAX is a corporation engaged in the business of coal mining. In 1986, AMAX[1] timely filed Business Tangible Personal Property Tax Returns with the appropriate township assessors, and also filed claims

---

1. Cumberland Leasing Company (Cumberland) and State Street Bank and Trust Co. (State Street) are corporations which owned certain business personal property which was leased to AMAX. Squaw Creek Coal Co. (Squaw Creek) is a joint venture of Aluminum Company of America and Peabody Coal Company (Peabody) and owned business personal property. AMAX is the duly authorized agent for all purposes of the exemption claims concerned herein for Cumberland and State Street. Throughout this opinion the petitioners jointly will be referred to as AMAX.

that certain pieces of mining equipment were exempt from Indiana property tax under Indiana Code section 6–1.1–10–9. Copies of all claims were forwarded to the Indiana Department of Environmental Management (DEM) which initially proposed to disallow exemption for the majority of items, but to allow exemption for pit pumps, slurry lines, and revegetation equipment.

In July of 1986, a hearing officer for the DEM and Water Pollution Control Board (WPCB) conducted a hearing concerning the DEM's initial determination. The parties disputed the disallowance of exemption for scrapers and tractors/dozers which were used to grade spoil piles, backfill, and salvage topsoil, and for gob haulers (trucks used to haul waste from coal preparation plants to disposal sites). The parties stipulated that all evidence introduced at hearings held the previous year by the Stream Pollution Control Board (SPCB—predecessor of the WPCB) in connection with initial determinations concerning the property exemptions claimed in 1985 by AMAX and other coal companies be incorporated into the record and considered as evidence for the 1986 hearing. On July 30, 1986, the WPCB issued final determinations which adopted all the hearing officer's findings and disallowed exemption for all scrapers, tractors/dozers or graders, and gob haulers. AMAX subsequently filed an appeal, and on December 21, 1987, the Hamilton Superior Court issued findings of fact and conclusions of law.

The trial court found that the disputed property was exempt under Ind.Code § 6–1.1–10–9 because it all was used predominantly to prevent, control, reduce, or eliminate pollution of a stream or public body of water by stabilizing, isolating, collecting, holding, controlling, or disposing of waste or contaminants. The court also entered the following conclusions:

"The Determinations are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, or not supported by substantial evidence....

"The Determinations are illegal and void because they are in excess of statu-

tory authority or limitations, and short of statutory right....

"The Determinations are illegal, void or contrary to constitutional rights, power, privilege or immunity in that they and their interpretation of the scope of the exemption in IC 6–1.1–10–9 are not in accordance with previously stated, ascertainable standards as required by the due process clause of the United States Constitution and corresponding provisions of the Constitution of Indiana, but rather are in accordance with a previously unpublished, void and unenforceable policy concerning such exemption, which policy was based upon facts obtained in the absence of, and without the knowledge of, petitioners."

Record at 189–92. The court concluded that AMAX was entitled to judgment in its favor as a matter of law. The DEM and WPCB filed this appeal.

### ISSUES

1. Did the trial court err in finding that the WPCB's guidelines had the effect of law and that they improperly imposed unascertainable standards upon taxpayer coal companies?

2. Did the trial court properly conclude that the DEM and WPCB interpreted the exemption statute in an unduly narrow manner?

### DISCUSSION AND DECISION

We note first that the trial court made special findings of fact pursuant to Indiana Rules of Procedure, Trial Rule 52. The State has not challenged the special findings as unsupported by the evidence; instead the State argues only that the trial court's decision was contrary to law. Where a party challenges the judgment only as contrary to law and does not challenge the special findings as unsupported by the evidence, we do not consider the evidence, but rather we look only to the trial court's findings to determine whether they support the judgment. *Boyer v. First Nat'l Bank* (1985), Ind.App., 476 N.E.2d 895, 897. Where the appellant does not attack the validity of the trial court's find-

ings, we accept them as true. *Indiana Dept. of State Revenue v. Hertz Corp.* (1983), Ind.App., 457 N.E.2d 246, 247, *trans. denied.*

*Issue One*

■ The State first argues that the trial court's decision was contrary to law in that it held that the agencies' internal policy guideline constituted an unpublished rule which should have been promulgated under Indiana Code section 4–22–2–1 et seq. The trial court's findings numbered twenty-eight (28) and twenty-nine (29) provide in relevant part:

"In adopting the guidelines the SPCB did not follow the procedures for the promulgation of regulations. The staff nonetheless was instructed to follow the guidelines in determining tax exemption. Petitioners' claims for exemption for tractors/dozers, graders, and scrapers, were denied based upon such guidelines ... [T]he guidelines represented the SPCB's views as to the predominant purpose of various reclamation activities."

Record at 185. The court then concluded that the SPCB's guidelines had the effect of law, interpreted, supplemented, or implemented a tax exemption, and did not relate solely to internal policies or procedures. The court noted also that the impact of the guidelines fell squarely upon coal companies' property tax exemptions, and that the guidelines set forth policies based upon facts obtained in the absence of and without the knowledge of the petitioning coal companies. We agree that the guidelines were invalid.

■ The trial court found and the State does not dispute that the WPCB (and its predecessor, the SPCB) was at all relevant times an administrative board of the State of Indiana, that the DEM was a State agency, and that the investigation and determination of claims by the DEM was subject to review by the WPCB. Administrative agencies may make reasonable rules and regulations to apply and enforce legislative enactments. *Podgor v. Indiana University* (1978), 178 Ind.App. 245, 250, 381 N.E.2d 1274, 1278–79, *trans. denied.*

However, in establishing such rules, the agency must comply with Ind.Code section 4–22–2–1 *et seq.*, including provisions for public hearings and review. In contrast, rulemaking actions that result in resolutions or directives that relate solely to internal policy, procedure, or organization and which do not have the effect of law are not subject to the same statutory requirements. Ind.Code § 4–22–2–13; *Blinzinger v. Americana Healthcare Corp.* (1984), Ind.App., 466 N.E.2d 1371, 1374–75. Likewise, administrative adjudications which involve administrative investigation, hearing, and determination exclude the adoption of rules and, therefore, are not subject to the rule-making provisions. Ind.Code § 4–22–1–2 (as applicable in 1986); *Blinzinger* 466 N.E.2d at 1374.

■ The State argues that the WPCB's use of its guidelines constituted both an internal policy and an administrative adjudication. In support of its position, the State cites *Stream Pollution Control Bd. v. AMAX, Inc.* (1985), Ind.App.; 475 N.E.2d 1157. Although that case discussed exemption investigations as administrative adjudications, it did not involve consideration of the guidelines at issue before us now. A rulemaking function is distinguished from an adjudicatory function in that the former involves an element of generality and operates on a class of individuals or situations while an adjudication operates upon a particular individual or circumstance. *Blinzinger* 466 N.E.2d at 1375. In addition, administrative rulemaking power has a prospective effect, whereas an adjudication operates retrospectively upon events which have already occurred. *Id.* While the investigations and determinations involved in the case at bar appear to be administrative adjudications, the guidelines possess qualities more typical of administrative rules. The agency prepared the guidelines for prospective use and apparently applied them to each business that applied for the exemption.

■ Furthermore, in order to satisfy due process, such administrative decision-making must be done in accordance with previously stated, ascertainable standards.

*Podgor* 178 Ind.App. at 258, 381 N.E.2d at 1283. The standards should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision. *Id.* Ascertainable standards provide those persons having potential contact with the administrative body with fair warning of the criteria by which their petitions will be considered. *Commission on General Educ. v. Union Township School* (1980), Ind.App., 410 N.E.2d 1358, 1361. We agree with the trial court that the guidelines were based upon standards determined by the SPCB from evidence obtained without the petitioners' knowledge. Thus, AMAX could not have known the criteria by which its exemption applications would be considered.

Finally, we do not accept the State's argument that the WPCB's guidelines constituted an internal policy. Rather, the evidence as reported in the findings reveals that the WPCB followed the guidelines in determining whether or not to allow tax exemptions for businesses. Although the guidelines may have served some internal purpose such as streamlining the review of exemption petitions, it is clear that the guidelines primarily impacted the businesses which petitioned for exemption and that they improperly had the effect of law upon those parties. The trial court properly concluded that the guidelines were void because they had not been properly promulgated in accordance with the Administrative Adjudication Act.

*Issue Two*

■ The State next argues that the trial court exceeded the scope of judicial review and substituted its own judgment for that of the agencies regarding the interpretation of a tax exemption statute. The State contends, and we agree, that the scope of review of an administrative agency's decision is very narrow. Indiana Code section 4–22–1–18 provides that a reviewing court may set aside the decision or determination of an agency only when that decision or determination is:

"(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

"(2) Contrary to constitutional right, power, privilege, or immunity;

"(3) In excess of statutory jurisdiction, authority, or limitations, or short [of] statutory right;

"(4) Without observance of procedure required by law; and

"(5) Unsupported by substantial evidence."

We do not believe the trial court exceeded this scope of review.

The trial court found first that the agencies' determinations were arbitrary, capricious, an abuse of discretion, and not in accordance with law. The exemption statute as applicable at the time this action was filed provided:

"(a) For purposes of this section, the term 'industrial waste control facility' means personal property which is:

"(1) Either included as a part of or an adjunct to a privately owned manufacturing or industrial plant; and

"(2) Used predominantly to prevent, control, reduce, or eliminate pollution of a stream or a public body of water located within or adjoining this state by treating, pretreating, stablizing, isolating, collecting, holding, controlling, or disposing of waste or contaminants generated by the plant.

"(b) An industrial waste control facility is exempt from property taxation if it is not used in the production of property for sale."

Indiana Code section 6–1.1–10–9. At issue in this case was whether the disputed equipment was used *"predominantly* to prevent, control, reduce, or eliminate pollution" (emphasis added). The DEM determined that the equipment in question was used to grade spoil piles and salvage topsoil, and that such grading and salvaging had become required by state and federal law. The DEM further concluded that the predominant purpose for mining reclamation was compliance with federal law, and that the disputed equipment was not predominantly used for prevention, control, reduction, or elimination of water pollution. Finally, the DEM explained that although Indiana's reclamation statute had obvious purposes to restore mined land and prevent water pollution, no single predominant pur-

pose could be inferred from the legislative history.

∎ We agree with the trial court that the DEM and WPCB interpreted the exemption statute too narrowly and inappropriately focused on the purpose of the reclamation statute. An administrative agency's interpretation of a statute is generally accorded great weight, however, an agency's incorrect interpretation of a statute is entitled to no weight. *Board of Trustees of Pub. Emp. Retirement Fund v. Baughman* (1983), Ind.App., 450 N.E.2d 95, 96. We find no reasonable basis for the agency's denial of the exemption in this case. The statute requires simply that the property be used predominantly to prevent or control water pollution. The trial court's findings, with which the State implicitly agreed, include the following facts:

"The consequences of surface coal mining by leasing unreclaimed spoil and gob piles on mined land was acid mine drainage and increased sedimentation of streams and other public waters....

Water runoff from mined lands, enhanced by the steep slopes of the spoil piles and progressive erosion, carried these pollutants and other minerals to the streams and waters of the State....

Grading of spoil piles is performed by tractors/bulldozers and is a necessary precondition to topsoil replacement and revegetation....

Topsoil is laid down over the top of the rough graded spoil piles to seal off potential pollutants and to provide a suitable medium for growing vegetative cover. It is not necessary for production of coal to remove topsoil separately or with special equipment (i.e., scrapers), and neither AMAX nor Squaw Creek used scrapers in their mining operations prior to the requirements that topsoil be separately removed and replaced....

The grading of spoil piles, backfilling and topsoil salvaging were recognized as preferred techniques for controlling water pollution from surface mining activities in governmental reports predating SMCRA [federal Surface Mining Control and Reclamation Act]....

The final environmental impact statement ('FEIS') published by the Department of the Interior, Office of Surface Mining and Reclamation Enforcement, in support of its permanent program regulations, cites such procedures as required methods of controlling water pollution....

The tractor/bulldozers and graders for which petitioners claimed exemption are used predominantly for grading and shaping spoil piles, constructing drainage ditches and sediment ponds, and grading gob. The scrapers for which exemption was claimed are used predominantly for topsoil removal and replacement, spoil pile shaping, and drainage ditch construction. The gob haulers for which AMAX claimed exemption are used for hauling gob from preparation plants to disposal sites."

Record at 181–85. The trial court found, and we agree, that the disputed property was used predominantly to prevent or control water pollution and that it fell within the statutory exemption. The agencies' decision was unsupported by substantial evidence. The denial of exemption apparently was based solely on the agencies' internal guidelines which we have already concluded were invalid. We therefore agree with the trial court's conclusion that the agencies' denial of exemption was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. Finally, because the agencies' interpretation of the exemption statute was not in accordance with previously stated, ascertainable standards, but rather was accomplished by way of a previously unpublished, invalid policy which was based upon facts obtained in the absence of, and without the knowledge of AMAX, the agencies' decision was contrary to constitutional right, power, privilege, or immunity. We conclude that the trial court did not exceed the scope of judicial review in reversing the order of the administrative agency.

AFFIRMED.

ROBERTSON and BUCHANAN, JJ., concur.