Terrence G. WILKIN and Antoinette H. Wilkin, Appellants (Respondents Below),

v.

1ST SOURCE BANK, Personal Representative of the Estate of Olga Mestrovic, Appellee (Petitioner Below).

No. 71A03–8908–CV–334.

Court of Appeals of Indiana, Third District.

Jan. 11, 1990.

George E. Herendeen, South Bend, for appellants.

Louis C. Chapleau, Chapleau, Farabaugh and Wozniak, South Bend, for appellee.

HOFFMAN, Judge.

Respondents-appellants Terrence G. Wilkin and Antoinette H. Wilkin (the Wilkins) appeal from the judgment of the St. Joseph Probate Court in favor of petitioner-appellee 1st Source Bank (Bank). The Bank, as personal representative of the estate of Olga Mestrovic, had filed a petition to determine title to eight drawings and a plaster sculpture owned by Olga Mestrovic at the time of her death but in the possession of the Wilkins at the time the petition was filed. The probate court determined that the drawings and sculpture were the property of the estate, and the court ordered the Wilkins to return the items to the Bank.

At the request of the Bank, the probate court entered findings of fact and conclusions of law. Neither party disputes the validity of the findings of fact. Accordingly, this Court will accept the findings as true. *Dept. of Environmental Manag. v. Amax* (1988), Ind.App., 529 N.E.2d 1209, 1211. The findings of fact may be summarized as follows.

Olga Mestrovic died on August 31, 1984. Her last will and testament was admitted to probate on September 6, 1984, and the Bank was appointed personal representative of the estate.

At the time of her death, Olga Mestrovic was the owner of a large number of works of art created by her husband, Ivan Mestrovic, an internationally-known sculptor and artist.[1] By the terms of Olga's will, all the works of art created by her husband and not specifically devised were to be sold and the proceeds distributed to members of the Mestrovic family.

Also included in the estate of Olga Mestrovic was certain real property. In March of 1985, the Bank entered into an agreement to sell the real estate to the Wilkins. The agreement of purchase and sale made no mention of any works of art, although it did provide for the sale of such personal property as the stove, refrigerator, dishwasher, drapes, curtains, sconces and French doors in the attic.

Immediately after closing on the real estate, the Wilkins complained that the premises were left in a cluttered condition and would require substantial cleaning effort. The Bank, through its trust officer, proposed two options: the Bank could retain a rubbish removal service to clean the property or the Wilkins could clean the premises and keep any items of personal property they wanted. The Wilkins opted to clean the property themselves. At the time arrangements were made concerning the cluttered condition of the real property, neither the Bank nor the Wilkins suspected that any works of art remained on the premises.

During their clean-up efforts, the Wilkins found eight drawings apparently created by Ivan Mestrovic. They also found a plaster sculpture of the figure of Christ with three small children. The Wilkins claimed ownership of the works of art, based upon their agreement with the Bank that if they cleaned the real property then they could keep such personal property as they desired.

The probate court ruled that there was no agreement for the purchase, sale or

---

1. Ivan Mestrovic lived from 1883 to 1962. A Yugoslavian sculptor, Mestrovic became internationally known and spent his final working years in the United States. He taught at Syracuse University and at the University of Notre Dame. Much of his instruction as well as his own creative work involved religious themes.

   Mestrovic is represented in the United States in the Brooklyn Museum, Art Institute of Chicago, Colgate University, Syracuse University, Syracuse Museum of Fine Arts and University of Notre Dame; in England, in the Leeds Art Gallery, Birmingham Museum of Art, Victoria and Albert Museum and Tate Gallery; and in various collections in Canada, Spain, Belgium and Italy. A great number of churches in various parts of the world own his works. *See* McGraw–Hill Dictionary of Art Vol. 4, p. 53 (1969); Phaidon (Press) Encyclopedia of Art and Artists, p. 440 (1978).

other disposition of the eight drawings and plaster sculpture. According to the lower court, there was no meeting of the minds, because neither party knew of the existence of the works of art.

On appeal, the Wilkins contend that the court's conclusions of law were erroneous. When the error charged is the trial court's application of the law, then this Court must correctly apply the law to the trial court's findings of fact. *See Indiana Industries, Inc. v. Wedge Products* (1982), Ind.App., 430 N.E.2d 419, 422.

■ Mutual assent is a prerequisite to the creation of a contract. *Board of School Com'rs of City of Indianapolis v. Bender* (1904), 36 Ind.App. 164, 172, 72 N.E. 154, 157. Where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties. J. Calamari & J. Perillo, The Law of Contracts § 9–26 (1987). There is no contract, because the minds of the parties have in fact never met.

The necessity of mutual assent, or "meeting of the minds," is illustrated in the classic case of *Sherwood v. Walker* (1887), 66 Mich. 568, 33 N.W. 919. The owners of a blooded cow indicated to the purchaser that the cow was barren. The purchaser also appeared to believe that the cow was barren. Consequently, a bargain was made to sell at a price per pound at which the cow would have brought approximately $80.00. Before delivery, it was discovered that the cow was with calf and that she was, therefore, worth from $750.00 to $1,000.00. The court ruled that the transaction was voidable:

"[T]he mistake was not of the mere quality of the animal, but went to the very nature of the thing. A barren cow is substantially a different creature than a breeding one. There is as much difference between them ... as there is between an ox and a cow...."

*Id.* at 577, 33 N.W. at 923.

■ Like the parties in *Sherwood*, the parties in the instant case shared a common presupposition as to the existence of certain facts which proved false. The Bank and the Wilkins considered the real estate which the Wilkins had purchased to be cluttered with items of personal property variously characterized as "junk," "stuff" or "trash". Neither party suspected that works of art created by Ivan Mestrovic remained on the premises.

As in *Sherwood*, one party experienced an unexpected, unbargained-for gain while the other party experienced an unexpected, unbargained-for loss. Because the Bank and the Wilkins did not know that the eight drawings and the plaster sculpture were included in the items of personalty that cluttered the real property, the discovery of those works of art by the Wilkins was unexpected. The resultant gain to the Wilkins and loss to the Bank were not contemplated by the parties when the Bank agreed that the Wilkins could clean the premises and keep such personal property as they wished.

The following commentary on *Sherwood* is equally applicable to the case at bar:

"Here the buyer sought to retain a gain that was produced, not by a subsequent change in circumstances, nor by the favorable resolution of known uncertainties when the contract was made, but by the presence of facts quite different from those on which the parties based their bargain."

Palmer, Mistake and Unjust Enrichment 16–17 (1962), *quoted in* J. Calamari & J. Perillo, The Law of Contracts § 9–26 (1987).

The probate court properly concluded that there was no agreement for the purchase, sale or other disposition of the eight drawings and plaster sculpture, because there was no meeting of the minds.

The judgment of the St. Joseph Probate Court is affirmed.

GARRARD and SHIELDS, P.JJ., concur.