SHOWALTER, INC., Appellant–
(Plaintiff/Counterclaim
Defendant Below),

v.

H. Merl SMITH, Margaret Smith, Smith
Walbridge Camps, Inc., Gary E. Smith
and Beverly E. Smith, Appellees–(Defen-
dants/Counterclaim Plaintiffs Below).

No. 43A03–9203–CV–91.

Court of Appeals of Indiana,
Third District.

Feb. 24, 1994.

Transfer Denied June 22, 1994.

Robert J. Hepler, Mark A. Armstrong, Hartzog, Barker, Hepler & Saunders, Goshen, for appellant.

Stephen R. Snyder, Donald K. Broad, Beckman, Lawson, Sandler, Snyder & Federoff, Syracuse, for appellees.

STATON, Judge.

Showalter, Inc. appeals the trial court's judgment in favor of Merl Smith, Margaret Smith, Smith Walbridge Camps, Inc., Gary Smith and Beverly Smith. Showalter, Inc. raises five issues for our review, which we consolidate into three and restate as follows:

   I.   Whether the trial court erred in enforcing the purchase agreement between the parties.

  II.   Whether the trial court awarded the proper measure of damages.

 III.   Whether the trial court correctly awarded attorney's fees.

We affirm in part, reverse in part, and remand.

Smith Walbridge Camp, Inc. ("Smith Walbridge") is a closely-held corporation owning real property adjacent to Bonar Lake in Kosciusko County, Indiana where it has operated summer camps since 1949 ("camp property"). Merl and Margaret Smith were the sole shareholders of Smith Walbridge until 1983 when they sold all of the stock to their son and daughter-in-law, Gary and Beverly Smith. In 1988, Gary Smith listed the camp property for sale with a realtor. In August 1989, Smith Walbridge conveyed a small portion of the camp property back to Merl and Margaret Smith, who lived nearby ("1989 conveyance"). When Dale Showalter, a shareholder in Showalter, Inc., expressed an interest in purchasing the camp property in November 1989, Merl Smith showed him around and indicated that the southern boundary of the property included all of the lake frontage along Bonar Lake.

On December 8, 1989, Gary and Beverly Smith entered a purchase agreement with Showalter, Inc. ("Showalter") for the sale of the 47.47 acres of camp property at a price of $250,000.00. Showalter paid $20,000.00 into an escrow account as earnest money. The closing was scheduled for August 25, 1990.

In July 1990, a surveyor prepared a legal description of the property showing that it

consisted of only 43.67 acres. The parties then scheduled a meeting for August 9, 1990 to discuss modifying the purchase agreement to reflect the reduced acreage and a lower sales price. No final agreement was reached at the August 9 meeting. The following day, Dale Showalter expressed his intent to rescind his offer to purchase the camp property. A survey completed later in the month showed that Smith Walbridge did not own the frontage property along the lake; rather, the frontage property had been included in the 1989 conveyance to Merl and Margaret Smith.

This action by Showalter to rescind the purchase agreement ensued. Smith Walbridge filed a counterclaim for breach of contract, seeking damages and attorney's fees.

## I.

*Enforceability of Purchase Agreement*

■ First, Showalter contends the purchase agreement is unenforceable because it was procured by a fraudulent misrepresentation as to the lake frontage and the amount of acreage. In order to prevail on a theory of fraud, Showalter must show the following elements:

1. a material representation of past or existing facts which
2. was false,
3. was made with knowledge or in reckless ignorance of the falsity,
4. was relied upon by the complaining party, and
5. proximately caused the complaining party injury.

*Nestor v. Kapetanovic* (1991), Ind.App., 573 N.E.2d 457, 458.

At the conclusion of the bench trial, the trial court made the following oral findings of fact *sua sponte:*

The Court is of the opinion that ... the failure of the ultimate description and survey to include [tracts] D and E was as a unilateral mistake of the defendants in earlier conveying that away in a matter [sic]

which is [sic] not intended and that when the question came to light which was far late in the history of this transaction in July, the defendants would have cured that defect ... had they been given an opportunity to do so and that while in a technical sense, there was a misrepresentation, ... it was innocent and would have been cured.... A cure was offered ... although at that time, Mr. Showalter was no longer acting in good faith, attempting to correct some errors or problems but was desperately trying to get out of this deal because he or his financial backers were disenchanted with the investment they were getting into....

Record, pp. 564–65.

■ When a party has requested specific findings of fact and conclusions of law under Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this Court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *In re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208, 211;[1] *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ This same standard of review applies when the trial court gratuitously enters

---

1. This standard of review, which comes from our supreme court (*see e.g., In re Wardship of B.C.,* *supra* ) is not intended to imply that a trial court is required to enter conclusions of law.

specific findings of fact and conclusions of law, with one notable exception. When the trial court enters such findings *sua sponte,* the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 652. We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

■ Both Gary and Merl Smith testified at trial that they did not intend for the 1989 conveyance between them to include the frontage property that was the subject matter of the purchase agreement with Showalter. Merl Smith stated he had no reason to keep the frontage property which had been erroneously transferred to him because he would not be able to access the property by any means other than water. Thus, there was evidence to support the trial court's finding that Smith did not knowingly, or with reckless ignorance, make a misrepresentation regarding the frontage property.

Showalter's contention that Smith fraudulently misrepresented the amount of acreage is also without merit. When Merl Smith purchased a portion of the camp property in 1967, the deed provided that the acreage was 24.44 acres, more or less. Further, a surveyor testified that most of the discrepancy in the amount of total acreage resulted from mistakes by surveyors in setting forth the original boundaries and that Gary Smith could not have known about the surveying mistakes when he conveyed the portion of the camp property to Merl Smith in 1989.

Additionally, Dale Showalter testified that the price for which he offered to purchase the camp property was based upon the entire parcel as a whole and not a price per acre, and that the discrepancy in acreage did not affect his development plans. *See Solinger v. Jewett* (1865), 25 Ind. 479 (generally, where a sale of real estate is made in gross, any minor deficiencies in the quantity of land actually conveyed will not be grounds for setting aside the purchase agreement). Further, Showalter acknowledges in its brief that the acreage shortage was material because the deficiency involved the valuable frontage property. Thus, the acreage discrepancy arguably was not material to the real estate transaction. The record supports the trial court's finding that there was not a fraudulent misrepresentation.

■ Alternatively, Showalter argues the acreage discrepancy and shortage of frontage property was the result of a mutual mistake of fact between the parties. Under the doctrine of mutual mistake, "[w]here both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided *if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." Wilkin v. 1st Source Bank* (1990), Ind.App., 548 N.E.2d 170, 172 (emphasis added).

The terms of the purchase agreement provided that Smith Walbridge was obligated to correct any defects of title within a reasonable time. However, Smith Walbridge was not given an opportunity to effectuate such a cure. Gary Smith testified that he notified Showalter's agent that Smith Walbridge would cure the defects by having Merl Smith reconvey the missing portion of the frontage property back to Smith Walbridge so that it could be included in the conveyance to Showalter. However, Showalter rejected Smith Walbridge's suggestion. Had Showalter permitted Smith Walbridge to cure the defects, the exchange of values would have reflected that which was contemplated by the parties. The trial court did not err in enforcing the purchase agreement between the parties.

## II.

### *Damages*

■ Next, Showalter argues the trial court erred when it awarded Smith Walbridge $25,000.00 in compensatory damages. The proper measure of damages is the difference between the sale price of the property to be sold and the fair market value of that property at the time of the buyer's breach. *Millikan v. Hunter* (1913), 180 Ind. 149, 100 N.E. 1041, 1044, *reh. denied; Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d

572, 575, *trans. denied.* The price voluntarily paid by a purchaser is admissible as evidence of the property's fair market value. *Arlington State Bank, supra.*

At trial, Smith Walbridge presented evidence of the fair market value of the camp property by showing that it had accepted a purchase offer for $225,000.00 on November 29, 1991. Gary Smith testified that the property being sold pursuant to this subsequent purchase agreement was the same tract covered in the purchase agreement between Smith Walbridge and Showalter.

Showalter argues the lapse of time between its alleged breach in August 1990 and the date of the subsequent purchase agreement in November 1991 renders the latter unsuitable for determining the fair market value of the property at the time of the breach. We do not agree. No particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by evidence in the record. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, 438, *trans. denied.* The evidence is sufficient to support the trial court's finding that the proper measure of compensatory damages is $25,000.00.

Next, Showalter challenges the trial court's award of $29,309.08 in consequential damages for interest paid by Gary Smith on outstanding debts that Gary Smith contends he would have paid off had Showalter complied with the terms of the purchase agreement. Notwithstanding Smith's claim, we can only speculate as to whether Smith would have actually paid off these debts with the proceeds from the sale of the camp property. An award of consequential damages may not be based on mere speculation or conjecture. *Weisman v. Hopf–Himsel, Inc.* (1989), Ind.App., 535 N.E.2d 1222, 1233; *Ashland Pipeline Co. v. Indiana Bell Telephone Co., Inc.* (1987), Ind.App., 505 N.E.2d 483, 489–90, *trans. denied.* Thus, the award for the additional interest paid by Gary Smith cannot stand.

Showalter also challenges the award of $4,000.00 in consequential damages for expenditures incurred by Smith Walbridge in resuming the maintenance and operation of the camp after Showalter breached the purchase agreement. Smith Walbridge presented evidence of over $13,000.00 in expenditures, including purchases made by Smith Walbridge to replace equipment and supplies that had already been sold by Smith Walbridge in reliance of Showalter's agreement to purchase the camp. Although the trial court did not specify how it arrived at the damage award of $4,000.00, it appears from the record that at least a portion of this award includes the replacement cost of equipment which Smith Walbridge continues to own. To allow Smith Walbridge to recover the cost of the equipment as well as retain possession thereof is to allow a double recovery. The proper measure of damages is the loss actually suffered as a result of the breach of contract; the plaintiff is not entitled to be placed in a better position than he would have been had the breach not occurred. *Ethyl Corp. v. Forcum–Lannom Assoc.* (1982), Ind.App., 433 N.E.2d 1214, 1221, *trans. denied.*

Because the trial court failed to use the proper measure of consequential damages, we must reverse the trial court's damage judgment and remand this cause for a redetermination of damages consistent with this opinion. Additionally, this court orders a clarification with respect to how the trial court arrived at the award of $4,000.00 in consequential damages.

### III.

#### Attorney's Fees

Finally, Showalter requests modification of the trial court's award of attorney's fees to Smith Walbridge. Generally, attorney's fees are not recoverable as damages in the absence of a statute or a contract stipulating the recovery of the same. *Kokomo Medical Arts v. Hutchens & Assoc.* (1991), Ind.App., 566 N.E.2d 1093, 1096. Here, the purchase agreement executed by the parties provided that, in any litigation arising in connection with the agreement, the prevailing party shall be entitled to recover all costs, including reasonable attorney's fees. Because we reverse and remand this cause for a determination of consequential damages

only, the trial court's award of attorney's fees will not be disturbed. With respect to appellate attorney's fees, the proper procedure is for the trial court on remand to hear the evidence and determine whether the amount requested is reasonable. *Seibert v. Mock* (1987), Ind.App., 510 N.E.2d 1373, 1378.

We affirm in part, reverse in part, and remand to the trial court on the issues of consequential damages and appellate attorney's fees.

GARRARD, J., concurs.

SHIELDS, J., concurs in part and dissents in part with opinion.

SHIELDS, Judge, dissenting in part.

I disagree with the majority opinion to the extent it fails to affirm the trial court's award of damages to Smith Walbridge. I vote to affirm the trial court's judgment in all respects.

The trial court awarded Smith Walbridge consequential damages representing interest it paid on two outstanding debts, for which the subject real estate was collateral, which Gary Smith testified he would have paid in full had Showalter fulfilled the purchase agreement. While the majority is correct that an award of consequential damages may not be based on "mere speculation or conjecture," such was not the case here. Instead, the trial court's award was based on the uncontradicted testimony of Gary Smith that he would have paid these loans in full from the proceeds of the contract and uncontradicted documentary evidence of the amount of interest paid after Showalter's default.

"Generally, the computation of damages is a matter with the discretion of the trial court." *Weisman v. Hopp–Himsel, Inc.* (1989), Ind.App., 535 N.E.2d 1222, 1232 (citation omitted). We may not reverse an award of damages if it is within the scope of the evidence before the trial court, and we may not reweigh the evidence or assess the credibility of witnesses. *Id.* (citations omitted). Here, the majority's holding that the trial court's acceptance of Smith's testimony that he would have paid the two debts if Showalter had not breached was merely "speculative" is clearly an example of the reviewing court placing its judgment of Smith's credibility above that of the trial court, which we may not do. Therefore, I would affirm the trial court's award of $29,309.08 in consequential damages.

Our standard of review further demands that this court affirm the judgment of the trial court awarding Smith Walbridge $4,000 for expenses it incurred in resuming the maintenance and operation of the camp after Showalter's breach. This $4,000 award is fully supported by evidence of supplies that were purchased for more than $500 and used by Smith Walbridge in maintaining the real estate, and by evidence that it expended more than $5,800 for equipment which it purchased to maintain the camp after Showalter's breach and which Smith Walbridge does not continue to own. The purchase agreement between Smith Walbridge and the subsequent purchaser contained the provision that the sale price of $225,000 included Smith Walbridge's agreement "to leave all lawn care equipment including tractors and mowers. (Seller to retain one of the riding mowers.)" Exhibit W. Neither did the trial court award Smith Walbridge double damages by considering the equipment expenditures as consequential damages. Inasmuch as the decrease in the sales price between the two agreements was exactly $225,000 it is apparent the $25,000 award represented the difference in fair market value of the real estate only and did not consider the equipment.

Therefore, I vote to affirm the trial court's judgment in all respects.