Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT,
NANCIE HALE, AS NEXT OF
FRIEND OF JOHN DOE

**JOHN P. YOUNG**
Young & Young
Indianapolis, Indiana

ATTORNEY FOR APPELLEE,
NAUTILUS INSURANCE COMPANY

**EDWARD F. HARNEY, JR.**
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NANCIE HALE, <br> As Next Friend of JOHN DOE, <br><br>     Appellant-Plaintiff, <br><br>     vs. <br><br> RANDOLPH COUNTY KINDS, INC. d/b/a <br> CAMP YALE, RANDOLPH COUNTY <br> DEPARTMENT OF COMMUNITY <br> CORRECTIONS, CAMP KIDZ-KAN-DU, <br> WINDS OF CHANGE COUNSELING <br> AND CONSULTING SERVICES, INC., and <br> AVIVA MARKOVITCH <br><br>     Appellees-Defendants. <br><br> NANCIE HALE, <br> As Next Friend of JOHN DOE, <br><br>     Appellant, <br>     Third Party Plaintiff, <br>     Third Party Counterclaim Defendant, <br><br>     vs. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     No. 89A01-1206-CT-246 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

NAUTILUS INSURANCE COMPANY,      )
                                 )
    Appellee,                        )
    Third Party Defendant,           )
    Third Party Counterclaimant.     )

---

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Charles K. Todd, Judge
Cause No. 89D01-0804-CT-7

---

**February 18, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Nautilus Insurance Company ("Nautilus") issued an insurance policy to Randolph County Casa, Inc. d/b/a Camp Yale ("Camp Yale") for 2003-2004. The policy that was reduced to writing provided abuse and molestation ("A&M") limits of $1,000,000 per occurrence (including claim expense) and $2,000,000 aggregate (including claim expense). In the summer of 2004, John Doe, an eight-year-old camper, was raped by a volunteer supervisor at the camp. Nancie Hale as next of friend of John Doe ("Hale") made a claim under the 2003-2004 Policy. Thereafter, Nautilus asserted that Camp Yale and Nautilus had intended the A&M limits to be $100,000/$300,000 and that the higher limits in the 2003-2004 Policy were the result of a mutual mistake or scrivener's error.

Both parties sought declaratory judgment regarding the A&M limits and filed motions for summary judgment. The trial court granted summary judgment to Nautilus and reformed the limits to $100,000 per occurrence (including claims expense) and $300,000 aggregate (including claims expense). Hale appeals and raises two issues, which we restate as:

(1) whether the trial court erred in reforming the A&M limits to $100,000/$300,000;

(2) whether the trial court erred in concluding that the claims expense reduction was applicable to the A&M limits.

We affirm.

### Facts and Procedural History

Nautilus issued an insurance policy to Randolph County Casa, Inc.[1] d/b/a Camp Yale for the period of August 19, 2002 through August 19, 2003 ("2002-2003 Policy"). The 2002-2003 Policy included an endorsement that provided A&M coverage limits of $100,000 per occurrence (including claims expense) and $300,000 aggregate (including claims expense). Nautilus also issued Camp Yale an insurance policy from August 19, 2003 through August 19, 2004 with an A&M endorsement ("2003-2004 Policy").[2] The parties agreed that they intended the 2003-2004 Policy to contain the same A&M limits as the 2002-2003 Policy; however, the 2003-2004 Policy as issued stated that the A&M limits were $1,000,000 per occurrence (including claims expense) and $2,000,000 aggregate (including claims expense).

In the summer of 2004, John Doe, an eight-year-old camper, at Kamp Kids Kan Du day camp was raped by a volunteer supervisor at the camp. Kamp Kids Kan Du day camp was located on Camp Yale. In February 2006, Hale, as next of friend of John Doe, put Camp Yale and Nautilus on notice of her claim against the policy. Thereafter,

---

[1] Randolph County CASA, Inc. notified Nautilus in April 2004 that it was changing its name to Randolph County KIDS, Inc.; the policy was amended to reflect this change.

[2] The 2002-2003 Policy was procured through Indiana Surplus and Specialty Lines, but at the time of renewal, Indiana Surplus was no longer contracted with Nautilus. Thus, Camp Yale had to fill out a new insurance application for 2003-2004. However, both Nautilus and Camp Yale agree that their intent was to retain the provisions of the 2002-2003 Policy with the exception of a few provisions that were expressly changed, but these changes did not affect A&M endorsement.

3

Nautilus issued a General Change endorsement ("Endorsement 3") that corrected the A&M limits to $100,000 per occurrence and $300,000 aggregate ("$100,000/$300,000"). Nautilus asserted that Endorsement 3 reflected the original intent of the parties and that the higher limits in the 2003-2004 Policy were the result of a mutual mistake or scrivener's error.

On May 28, 2010, Hale sought a declaratory judgment that the A&M limits at the time of the alleged act were $1,000,000/$2,000,000 and that Endorsement 3 entered into after the filing of the suit was not valid because neither Hale nor John Doe, as a third-party beneficiary, agreed to the endorsement. Hale alternatively argued that if the trial court found that the A&M limits were $100,000/$300,000, the claims expense reduction should not apply because this language was not explicitly included in Endorsement 3.

On July 21, 2010, Nautilus filed its answer and counterclaimed for declaratory judgment. Nautilus sought an order that declared the A&M limits under the policy were $100,000/$300,000 and that such coverage limits were reduced by all claims expense incurred by Nautilus in defending claims of Hale against Camp Yale. Nautilus claimed that the $1,000,000/$2,000,000 A&M limits included in the 2003-2004 Policy were the result of scrivener's error and were a mutual mistake. Nautilus argued that the parties to the agreement, Nautilus and Camp Yale, had executed Endorsement 3 to correct the erroneously issued policy to the $100,000/$300,000 limits that were intended and agreed to by the parties.

Both parties subsequently moved for summary judgment. On November 2, 2011, a hearing was heard on the motions for summary judgment. On May 17, 2012, the trial

4

court granted Nautilus's motion for summary judgment and denied Hale's motion for summary judgment. The trial court concluded that the $1,000,000/$2,000,000 A&M limits in the 2003-2004 Policy did not reflect the mutual intent or agreement of the parties; therefore, the court reformed the limits to $100,000 per occurrence (including claims expense) and $300,000 aggregate (including claims expense).[3]

Hale now appeals.

**Standard of Review**

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ind. Trial Procedure Rule 56(C). The moving party had the burden to "prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law." Peterson v. First State Bank, 737 N.E.2d 1226, 1229-30 (Ind. Ct. App. 2000) (citing Stephenson v. Ledbetter, 596 N.E.2d 1369, 1371 (Ind. 1992)). When the moving party has met this burden with a prima facie showing, the burden shifts to the opposing party to set forth specific facts showing a genuine issue for trial. Id. When filing the motion or response, the party must "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." Id. (citing Ind. Trial Rule 56(C)).

"When reviewing an entry of summary judgment, we stand in the shoes of the trial court." Id. 1230. We consider the facts in a light most favorable to the nonmoving party

---

[3] Hale asserts that it was unclear whether the trial court was ordering a reformation of the policy or allowing the change pursuant to Endorsement 3. Appellant's Br. at 7. We disagree with Hale that the trial court was unclear in this regard. The trial court explicitly stated that "the Court is not finding that Nautilus amended the 2003-2004 Policy by Endorsement 3." Appellant's App. p. 29.

and will not reweigh the evidence. Id. "We may sustain a summary judgment upon any theory supported by the designated materials." Id. However, if we determine the trial court misapplied the law, we will reverse the decision. Id. (citing Stemm v. Estate of Dunlap, 717 N.E.2d 971, 975 (Ind. Ct. App. 1999)).

## I. Reformation

Hale argues that the trial court erred by reforming the policy and reducing the A&M limits to $100,000 per occurrence and $300,000 aggregate. Reformation is an extreme equitable remedy that "is appropriate only in limited circumstances: (1) where there is a mutual mistake such that the written instrument does not reflect what the parties truly intended; and (2) where there has been a mistake on the part of one party accompanied by fraud or inequitable conduct by the other party." Id. at 1229. If there is a mistake by the scrivener, reformation of the instrument is permitted if "it is logically indicated that both parties were mistaken as to the actual contents of the instrument." Id. at 1229-30. Relevant to the determination of the parties' true intent is the parties' conduct during the contract and "writings executed at the same time and relating to the same transaction or subject matter[.]" Beradi v. Hardware Wholesalers, Inc. 625 N.E.2d 1259, 1261 (Ind. Ct. App. 1993).

Here, Nautilus and Camp Yale agree that they intended the policy to have A&M limits of $100,000/$300,000. In his sworn affidavit, Martin Wells ("Wells"), an insurance agent who procured the 2002-2003 Policy and the 2003-2004 Policy on behalf of Camp Yale, stated that he intended to procure the same A&M coverage in 2003-2004 as had previously existed in the 2002-2003 Policy, which was $100,000/$300,000. He

6

averred that he did not notice the A&M limits were not $100,000/$300,000 when he received the 2003-2004 Policy and that had he noticed them he would have asked that they be corrected. He also averred that he did not object to the correction regarding the A&M limits after the claim was filed regarding the incident in question, because "the $100,000 per occurrence/$300,000 aggregate Abuse or Molestation limits was what was requested and purchased by Camp Yale." Appellee's App. pp. 106-107.

Donna Brooks, the underwriter responsible for the issuance of the policy, similarly averred that the premiums were based on the $100,000/$300,000 limits that were intended by the parties. Moreover, writings executed at the time the original agreement was made—Camp Yale's policy application and two quotations regarding the terms of coverage—also reflect that the parties intended A&M limits of $100,000/$300,000.[4] For these reasons, we conclude the trial court did not err by reforming the agreement, because the parties intended A&M limits of $100,000/$300,000, but simply failed to accurately reduce this intent accurately to writing.[5]

---

[4] Hale also argues that as a matter of public policy reformation should not be allowed, because Camp Yale is no longer in existence and, as a result, has no incentive to prevent a change in the policy amounts. However, the evidence Nautilus submitted included applications and quotations created in 2003 while Camp Yale was still in existence, showing that both parties intended lower policy limits. Moreover, while Hale asserts Camp Yale has no incentive to prevent a change, she also does not set forth any evidence that Camp Yale has an incentive to allow a change in the policy limits.

[5] Hale also argues that Nautilus should not be entitled to reformation because it did not read the policy and endorsements carefully enough to catch the mistake at issue. See Appellant's Br. at 13 (citing Monroe Guar. Ins. Co. v. Langreck, 816 N.E.2d 485, 490 (Ind. Ct. App. 2004) (holding that "[e]quity should not intervene and courts should not grant reformation if the party seeking reformation failed to read the instrument or, if it was read, failed to give heed to its plain terms."). While equity prevents reformation when the party's mistake was not reading the contract or heeding the terms, it does not prevent reformation when a party reads the contract but fails to notice a scrivener's error. There was no credible evidence in the record that Nautilus did not read the policy or heed its terms. If equity prevented reformation whenever a party to the contract failed to notice a scrivener's error in the contract, reformation would be limited to cases of fraud, an untenable result.

7

Hale also argues that the trial court was precluded from reforming the contract without her consent, because she was a third-party beneficiary to the policy with A&M limits of $1,000,000/$2,000,000. However, since we conclude there was a mutual mistake in the policy containing the $1,000,000/$2,000,000 A&M limits, we note that there was no meeting of the minds between the parties and, as a result, there was no valid contract with these higher limits. See Wilkin v. 1st Source Bank, 548 N.E.2d 170, 172 (Ind. Ct. App. 1990) ("There is no contract, because the minds of the parties have in fact never met.") Consequently, Hale could not have been a third-party beneficiary to the policy containing the higher limits, because it was not, in fact, a contract.

For all these reasons, we conclude that the trial court's reformation of the contract to the intended A&M limits of $100,000/$300,000 was appropriate.

## II. Claims Expense Reduction

Hale further argues that the trial court erred by concluding that the reformed, $100,000/$300,000 A&M limits could be properly reduced by claims expenses, despite the omission of supporting language from Endorsement 3. However, the trial court, in its May 17, 2012 Order, did not find, as Hale asserts, "that Nautilus amended the 2003-2004 Policy by Endorsement 3."[6] Appellant's App. p. 29. Rather, the trial court reformed the 2003-2004 Policy to correct the mutual mistake of fact regarding the A&M limits. See id. at 29, 32. As a result, we look at the language in the reformed 2003-2004 Policy, not Endorsement 3, to understand whether a claims expense reduction should apply to the

---

[6] Even if the trial court had found that Nautilus amended the 2003-2004 Policy by Endorsement 3, we agree with the trial court that "[t]here was no need to provide within said endorsement any change in the 'including claims expense' language, as the same was included in the 2002-2003 Policy as well as the 2003-2004 Policy and would be applicable to the parties' agreement." Appellant's App. p. 29.

8

policy limits. The 2003-2004 Policy contained the limitation "including claims expense[,]" and we agree with the trial court that unlike the clear evidence supporting reformation of the A&M limits, "there is no such evidence to support any modification of the 'including claims expense' language." Id. at 29. Consequently, we agree with the trial court that the policy limits are to be reduced by claims expenses.

### Conclusion

For all these reasons, we conclude that the trial court's reformation of the 2003-2004 Policy was appropriate in order for the policy to reflect the parties' intention of A&M limits of $100,000 per occurrence, reduced by claims expenses and $300,000 in aggregate, also reduced by claims expenses. Therefore, the trial court did not err in granting summary judgment in favor of Nautilus.

Affirmed.

KIRSCH, J., and CRONE, J., concur.