James Robert ROHRER, D.O.,
Appellant–Respondent,

v.

Linda Clark ROHRER, Appellee–
Petitioner.

No. 42A05–9812–CV–610.

Court of Appeals of Indiana.

Sept. 5, 2000.

Maurice E. Doll, Doll Webster & Carnahan, Vincennes, Indiana, Attorney for Appellant.

John D. Clouse, John P. Brinson, Evansville, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

James Robert Rohrer, D.O. appeals from the decision by the dissolution court which awarded Linda Clark Rohrer the value of a vehicle leased and then later owned by James's medical practice, Rohrer Family Clinic, Inc. (the Clinic). Linda brings a cross-appeal from the court's judgment, entered after a post-decree evidentiary hearing, awarding James $62,263.43 for post-separation expenses. As restated, James's issue on appeal is:

> Did the trial court err by ordering James to pay Linda $21,500 as a condition for her return of a 1995 Ford Explorer which was leased by the Clinic and later purchased by the Clinic after the parties' final separation date?

On cross-appeal, as restated, Linda poses two issues:

> Did the trial court err by hearing additional evidence regarding James's post-separation expenses subsequent to its judgment on the first motion to correct error?

> Did the trial court err by awarding James $62,263.43 for his post-separation expenses?

We affirm in part, and reverse and remand in part.

The facts disclose that the parties' marriage was dissolved after a four-day trial in October 1997. Linda presented evidence, largely based upon a letter written by James, that James intentionally incurred expenses, while the dissolution proceedings were pending, in an effort to deplete Linda's portion of the marital estate. The trial court entered its dissolution decree on November 6, 1997. The trial court incorporated its "trial notes and rough findings" into the order. *Record* at 24; *Supplemental Record* at 239. The trial court valued the property and ordered an equal distribution of assets. The final distribution of some assets was contingent upon their sale at auction. The trial court appointed a trustee to supervise the auction and administer the proceeds. The court ordered an equal distribution of the proceeds from the auction. The trial court rejected James's contention that he incurred significant expenses in order to maintain some marital assets while the dissolution proceedings were pending.

On November 28, 1997, Linda filed her motion to correct error directed, in part, to the valuation of accounts that increased after the date of separation. The trial court set the matter for a hearing. Other post-dissolution motions were filed by the parties and by the trustee. The hearings were consolidated and continued. Evidentiary hearings were held on January 8, 1998, March 13, 1998, and June 29, 1998. At the hearing on June 29, 1998, the trial court took under advisement all pending matters. At the conclusion of the hearing on June 29, 1998, counsel again noted that James had incurred expenses associated with maintaining the assets pending the final dissolution. The trial court indicated that if a portion of the final decree was altered, based upon Linda's motion to correct error, it would be equitable to consider evidence regarding James's expenses incurred pending the final decree. Thus, according to the trial court, another hearing would be required to hear the evidence that had not been presented at the four-day trial. The trial court stated:

> Now, as I stated earlier, this will probably bring about another hearing where the doctor can come in with what he's spent out of pocket on taxes and so forth, but I'll make that appear a, specified in my Order, you know. One more days (sic) hearing doesn't matter. . . .

*Supplemental Record* at 2319.

On July 27, 1998, without the benefit of another hearing, the trial court entered findings of fact and conclusions of law as to, inter alia, the pending motion to correct error. In pertinent part the order states:

a. The court took judicial notice of the Dow Jones Industrial averages both in the decree and at the hearing of motion to correct errors. Because time has shown that the court was in error at the date of decree in anticipating a possible sharp decline in stock values, the court grants the motion to correct errors and values the Merrill Lynch account in paragraph 5 of the decree at $310,500.00 and orders division made on that evaluation.

b. Due to change in valuation, the court finds that to do equity, the husband should be allowed to prove additional set-offs such as the cost of the pool cover mentioned in paragraph 11 of decree, Interest paid on mortgages, taxes paid on residence farm and office and reasonable expense of the keeping and maintaining of the quarter horses during the approximately 18 months of separation. This will entail another hearing upon the above set-offs only, the court is not inviting a relitigation of the dissolution.

c. In accordance with paragraph 5b above, the court on its own motion strikes paragraph 11 from the decree until such time as the pool

cover issue is explored with more complete evidence.

6. As to wife's paragraph 15 of motion, the valuation of Ford vehicle, the court conforms to the evidence presented and amends paragraph 14 of decree to value same at $21,500.00

\* \* \*

Attorneys for parties are to approach the court for hearing date for only the matters relating to paragraph 5b, above. *Record* at 69.

On August 12, 1998, James filed a motion to correct error. James complained, *inter alia*, that in the original decree, Linda was awarded the Ford Explorer and that it was not properly a marital asset because it was leased and then later owned by the Clinic. James apparently filed a second motion to correct error on August 27, 1998 questioning a portion of the trial court's July 27, 1998 order that granted Linda a permanent protective order. The parties contend that the trial court denied James's motion to correct error filed on August 27, 1998.[1]

On November 12, 1998, the trial court conducted a hearing. When the hearing commenced, the following colloquy occurred:

THE COURT:

It's my understanding this is a continuation hearing today on a question of set-offs occurring approximately from the time of filing to the time of trial of the dissolution by the husband on the real estate taxes, insurance, etc.

MR. DOLL:

It is Your Honor. I also filed . . [ . . ]

THE COURT:

I might, before I get on in my . . it's my recollection in my earlier findings I told the parties I was not inviting a re-trial of this thing from the start just on this limited issue. So I want that understood before we get into the middle of it.

ARGUMENTS OF MR. DOLL:

Your Honor, we also had filed two motions to correct error. The Court [ . . . ] I had received an order on denying one of the motions to correct error. We'd asked for a consolidation of that other or second motion to correct error as to the fourth . . [ . . ]

THE COURT:

I don't recall what the second was?

MR. DOLL:

Ford Explorer, whether it was truly an asset of the marital estate capable of being divided or set-off to the spouse.

THE COURT:

I don't recall ever seeing that.

MR. DOLL:

It was filed, Your Honor, on August 12th.

THE COURT:

I saw the one on the protective order. I ruled on that, don't recall ever seeing it. That's based on what?

*Record* at 2329-31. Counsel urged that neither the Ford Explorer nor the value of the Explorer should be awarded to Linda. The focus of the evidentiary portion of the hearing consisted of evidence the trial court had rejected at the time of the four-day trial concerning expenses James incurred in maintaining marital assets while the dissolution proceedings were pending.

---

1. The court's Chronological Case Summary (CCS) notes that on July 27, 1998, the court entered findings of fact and conclusions of law and a judgment with regard to contempt proceedings and the motion to correct error. The entry for August 12, 1998 states: "Respondent by counsel files Motion to Correct Errors, Motion for Further Hearing as to Expenses Incurred During the Penancy (sic) of the Action & Motion for Consolidation of Pending Hearings." *Record* at 9. An entry dated September 4, 1998 set all pending matters for a two-day hearing in October. The court, on its own motion, vacated the October hearing dates and reset the matters for November 12, and November 13, 1998. The CCS does not reflect James's motion to correct error filed August 27, 1998 or a ruling thereon.

In an order dated November 20, 1998, with an "effective date" of November 13, 1998, *Record* at 100, the court stated in part:

> The Court finds a Motion to Correct Errors was heretofore filed on or about August 12, 1998, and not ruled upon by the Court due to inadvertence. The Court now considers same and finds that the Motion to Correct Errors is well taken; that the property was that of the Rohrer Medical Clinic with very little actual equity value at the time of issuance of the decree. Court further finds that the valuation has been corrected by Motion to Correct Errors to be $21,-500.00, said valuation being that placed upon it by the wife herein based upon testimony at the trial. The Court now considers same, grants the Motion to Correct Errors and Orders that the wife herein execute over a title to the subject Ford Explorer to the husband upon him furnishing to her a certified check for $21,500.00 as payment for same.

*Record* at 99.

On December 8, 1998, the trial court issued an order denominated "FINDINGS OF FACT–CONCLUSIONS OF LAW DECREE." *Supplemental Record* at 450. The order was directed solely to the expenses James incurred to maintain marital assets while the dissolution action was pending. The court incorporated its calculation of the allowable expenses and awarded James "$62,263.43 as a set off against marital property." *Supplemental Record* at 452.

■ We turn first to the question of the propriety of holding an evidentiary hearing, on matters addressed in the original decree, subsequent to the ruling on the first motion to correct error. Ind. Trial Rule 52(B) provides:

> Upon its own motion at any time before a motion to correct errors (Rule 59) is required to be made, or with or as part of a motion to correct errors by any party, the court, in the case of a claim tried without a jury or with an advisory jury, may open the judgment, if one has been entered, take additional testimony, amend or make new findings of fact and enter a new judgment or any combination thereof if:
>
> (1) the judgment or findings are either against the weight of the evidence, or are not supported by or contrary to the evidence;
>
> (2) special findings of fact required by this rule are lacking, incomplete, inadequate in form or content or do not cover the issues raised by the pleadings or evidence;
>
> (3) special findings of fact required by this rule are inconsistent with each other; or
>
> (4) the judgment is inconsistent with the special findings of fact required by this rule.
>
> Failure of a party to move to modify the findings or judgment under this subdivision and failure to object to proposed findings or judgment or such findings or judgment which has been entered of record shall not constitute a waiver of the right to raise the question in or with a motion to correct errors, or on appeal.

In *Hubbard v. Hubbard,* 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998), this court observed:

> Trial Rule 52(B) provides that in a case tried without a jury, the court may, at any time before a motion to correct error is required to be made, or with or as part of a motion to correct error by any party, take additional testimony, amend or make new findings of fact and enter a new judgment, or any combination thereof. Thus, at least up to and including *the ruling on a motion to correct error* the trial court is permitted to alter, amend or modify its judgment without limitation.

(Citations omitted). Pursuant to T.R. 52(B), without limitation, the trial court could revisit the issues presented and determined in the final decree and take additional evidence thereon through the time

of the ruling on the first motion to correct error.

■ We perceive finality as an important limitation on the trial court's ability to take additional evidence and further modify its final decree of November 6, 1997, once it had ruled on the pending motion to correct error.

A strong policy favors the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties ... or the court divides the property.... One purpose of this policy is to eliminate vexatious litigation which often accompanies the dissolution of a marriage. When marital property is divided, both assets and liabilities must be considered. Thus, a partial modification of a property settlement agreement will likely upset the division of property equation in the Decree. The adjustment of one asset or liability may require the adjustment of another to avoid an inequitable result or may require the reconsideration of the entire division of property.

*Dusenberry v. Dusenberry,* 625 N.E.2d 458, 461 (Ind.Ct.App.1993) (citations omitted).

The traditional notions of finality, including the axiom that parties are not entitled to "a second bite at the apple," can be abridged by T.R. 52(B). Pursuant to T.R. 52(B), finality is abridged only until the ruling on the motion to correct error.

■ We also are mindful that, in dissolution proceedings, a trial court must finally dispose of all marital assets in one final judgment. *See Harris v. Harris,* 690 N.E.2d 742 (Ind.Ct.App.1998). "No part of the distribution may be conditioned upon a subsequent change in circumstances." *Id.* at 744. "The trial court has no authority to exclude or set aside marital property but rather must divide all property." *Moore v. Moore,* 695 N.E.2d 1004, 1010 (Ind.Ct.App.1998).

■ The trial court's July 27, 1998 ruling on the first motion to correct error struck a portion of the November 1997 final decree and conditioned the final division of assets upon a determination after an evidentiary hearing to be held at a later date. The trial court's July 27, 1998 ruling attempted to replace, in part, a final order that disposed of all marital property with an order that did not finally dispose of all of the parties' marital property in one decision.

James contends that the trial court could alter its decision and take additional evidence after the July 27, 1998 ruling because: 1) the ruling was not final, inasmuch as the ruling did not finally dispose of all marital property, and 2) pursuant to T.R. 52(B), the court could modify its judgment while the cause was in fieri. See *Haskell v. Peterson Pontiac GMC,* 609 N.E.2d 1160, 1163 (Ind.Ct.App.1993) ("a trial court has inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment"). James's arguments ignore the fact that the July 27, 1998 ruling was rendered pursuant to a motion to correct error. A final judgment had been entered in the matter on November 6, 1997. As previously noted, T.R. 52(B) confers authority to alter rulings and hear additional evidence only until the ruling on the motion to correct error. *See Hubbard v. Hubbard,* 690 N.E.2d 1219.

T.R. 52(B) does not allow a trial court indefinite discretion to alter or amend the final judgment. The trial court's authority to hold additional evidentiary hearings, as to the disposition of the marital assets, was lost with the July 27, 1998 ruling on the first motion to correct error.

We turn to the result. In *Harris,* this court determined that the court's final decree did not finally dispose of all marital assets. *Harris v. Harris,* 690 N.E.2d 742. We remanded the cause for a final disposition of all assets in one judgment. *Id.* In *Moore* this court affirmed the trial court as to the matters finally determined and remanded for a final order regarding matters the trial court attempted to reserve from the final decree. *Moore v. Moore,* 695 N.E.2d 1004.

Pursuant to the dictates of T.R. 52(B) and the finality concerns attendant to dissolution proceedings, we remand the cause for entry of a final disposition as to the matters the trial court attempted to exclude from the July 27, 1998 ruling on the first motion to correct error. Inasmuch as the $62,263.43 award to James for postseparation expenses was based upon the improper November 1998 hearings, it is reversed. Because the trial court did not have authority to hold the November 1998 evidentiary hearings, the disposition of the excluded assets must be based upon the evidence presented at the four-day trial in October 1997.

■ Our inquiry does not end there. James filed a motion to correct error on August 12, 1998. Because the trial court's July 27, 1998 ruling on the first motion to correct error altered its final decree, James could properly file a second motion to correct error. This court has stated:

"Once a ruling is made upon a motion to correct error it may not be reconsidered by the trial court." ... However if the trial court had altered, amended, or supplemented its findings and/or judgment in its ruling on the first motion to correct error, the parties would have had the discretion to file another motion to correct error directed to the changed findings and/or judgment.

*Jackson v. Pempleton,* 559 N.E.2d 1193, 1193 (Ind.Ct.App.1990) (quoting 4 W. Harvey & R. Townsend, INDIANA PRACTICE § 59(g) at 118 (1971)).[2]

The trial court's July 27, 1998 ruling on the first motion to correct error altered its November 6, 1997 final decree as to the distribution of the Ford Explorer. James timely filed a motion to correct error after the trial court's ruling on the first motion to correct error. After continuing the hearings as to the motion to correct error,

and the matters purportedly reserved for a later decision after evidentiary hearings, the trial court once again altered its decision as to the Ford Explorer in the order dated November 20, 1998 and "effective" as of November 13, 1998. The CCS entries indicate that the hearing on the motion to correct error was continued to November 12, 1998, the court entered its judgment before thirty days expired, and James timely filed his praecipe. The appeal, with regard to the Ford Explorer, is not dependent upon the matters the trial court attempted to reserve for a later evidentiary hearing and determination. Accordingly, the matter is properly presented for review.

■ In its final decree, the trial court awarded the Ford Explorer to Linda. In its ruling on the first motion to correct error, the trial court altered the value of the Explorer to conform with the evidence and awarded the Explorer to Linda. In the ruling on James's motion to correct error, the trial court recognized James's contention that the Explorer was leased and later owned by the Clinic and was not a marital asset. In its last ruling on the matter, the court removed the Explorer from the marital pot and ordered Linda to return the Explorer to James upon his payment to her of the value of the Explorer. The court's order maintained the equal distribution of assets. Ignoring the equal distribution of assets, James steadfastly urges that Linda is not entitled to the Explorer or its value because it was not an asset of the marriage.

When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. We consider only the evidence most favorable to the trial court's

2. Although the record does not so reflect, James apparently filed another motion to correct error on August 27, 1998 which was denied by the trial court. Pursuant to T.R. 53.4, a repetitive motion is deemed denied five days after it is filed. Further, to the extent that the motion might be construed as a motion to reconsider, the court had not yet ruled on the August 12, 1998 motion to correct error and an aggrieved party is not permitted reconsideration of a motion to correct error. *See Jackson v. Pempleton,* 559 N.E.2d 1193.

disposition of the property. We will reverse only if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom.

*Capehart v. Capehart,* 705 N.E.2d 533, 536 (Ind.Ct.App.1999) (citations omitted), trans. denied. Ind.Code Ann. § 31–15–7–5 (West 1998) provides for a presumption in favor of an equal distribution of assets. The trial court employed the equal distribution presumption and concluded that Linda was entitled to $21,500 to maintain the equal division. Once the trial court determined that James was correct in his assertion that the Ford Explorer was not properly included in the marital pot, the trial court ordered James to pay $21,500 to maintain equality. The result is not clearly against the logic and effect of the evidence. We affirm the trial court's decision with regard to the value of the Ford Explorer.

In summary, the trial court's ruling that Linda is entitled to the $21,500 value of the Ford Explorer in order to maintain an equal distribution of assets is affirmed. The $62,263.43 award to James for post-separation expenses is reversed. The cause is remanded for entry of a final judgment, based upon the evidence presented at the four-day trial in October 1997, as to the matters the trial court attempted to exclude from the July 27, 1998 ruling on the first motion to correct error.

Judgment affirmed in part, and reversed and remanded in part.

VAIDIK, J., and DARDEN, J., concur.