

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-DR-385



FILED

Nov 21 2024, 11:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## August Wohlt,

*Appellant-Respondent,*

–v–

## Christi Wohlt,

*Appellee-Petitioner.*

---

Argued: June 27, 2024 | Decided: November 21, 2024

Appeal from the Delaware Circuit Court
No. 18C01-1507-DR-78
The Honorable Marianne Vorhees, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-DR-2685

---

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa and Slaughter concur.
Justice Goff dissents with separate opinion.

**Molter, Justice.**

While they were married, Christi Wohlt and August Wohlt owned a company called Echo Systems, Inc., which mined, traded, and stored cryptocurrencies. When they dissolved their marriage, they agreed in their property settlement that "Husband shall retain all assets of the business, except for . . . Wife's Mac computer and printer, iPhone, iPad and laptop," which she would retain. Appellant's App. Vol. 2 at 59. But they both forgot that Echo Systems still owned some cryptocurrencies, and the question we must answer is whether that oversight makes their agreement ambiguous as to who should own them.

As we explain below, we hold there is no ambiguity, and the parties' agreement that August would retain "all" of the company's assets included the company's cryptocurrencies. While parties sometimes agree in their property settlements to make later adjustments for forgotten assets, the parties here instead made clear that their agreement divided all their assets—forgotten and remembered—so that their division would be final. And while a party who remembers a forgotten asset after a dissolution decree may sometimes have a remedy through claims like mutual mistake or fraud, this appeal doesn't present those claims.

## Facts and Procedural History

Christi and August married in June 2007. During their marriage, they established Echo Systems, which, relevant here, owned two cryptocurrencies: Bitcoin and Ethereum. After eight years of marriage, Christi petitioned for dissolution in July 2015.

About a year later, the parties successfully participated in mediation, entering into a property settlement agreement. That agreement stated that the parties would close Echo Systems within thirty days and that they would transfer "all" of the company's assets to August, except that Christi would retain two computers, a printer, a phone, and a tablet. The trial court then dissolved the parties' marriage on June 6, 2016 through a Decree of Dissolution, which incorporated their property settlement agreement.

While auditing Echo Systems' property in August 2017, August discovered the company still owned 6.21 units of Bitcoin and 1,000 units of Ethereum, which had been worth about $18,000 at the time of the parties' mediation. Critical here, both August and Christi were once aware of the cryptocurrencies, but they both forgot about them while dissolving their marriage. August also learned that, because of a hacking incident, the Ethereum was converted to a new cryptocurrency, Ethereum Classic, in July 2016, about a month after the court entered the Decree of Dissolution.

To protect Ethereum users from the cyberattack, the Ethereum community executed a "hard fork" (programming update), which seized all hacked Ethereum and returned it to users in the form of Ethereum Classic. The hard fork also created another cryptocurrency, Ethereum, and users could claim an amount of that currency equal to what is now known as Ethereum Classic. Because Echo Systems owned 1,000 units of the original Ethereum (now Ethereum Classic), August claimed 1,000 units of the new Ethereum.

August informed his attorney of these developments soon after, and his attorney notified Christi's attorney about a year later in October 2018. After another year and a half, in May 2020, when the parties' efforts to negotiate a resolution failed, Christi filed a Verified Motion to Address Asset Omitted from the Marital Estate and Child Support Matters, requesting that the trial court divide the cryptocurrencies between the parties and increase August's child support obligation. A few months after that, in August 2020, Christi filed a Trial Rule 60(B) motion, although the motion did not specify which rule provision Christi was invoking and did not identify the relief she was seeking.

August responded a few months later by moving for partial summary judgment, arguing that the property settlement agreement unambiguously awarded him all of Echo Systems' property, including its cryptocurrencies, and Christi was therefore not entitled to any share of the cryptocurrencies. Christi filed a response arguing that there was "a genuine issue of material fact" defeating summary judgment, "that being

whether the cryptocurrency assets that were not disclosed at the time of the parties' mediation [were] subject to division by th[e] Court." *Id.* at 187.

The trial court denied August's summary judgment motion on the basis that there were fact issues precluding summary judgment: "what did the parties know, and when did they know it?" *Id.* at 29. Then, following a two-day evidentiary hearing, the court entered an order awarding Christi half the value of the disputed cryptocurrencies, which amounted to $1,842 for the Bitcoin, $14,000 for the original Ethereum (Ethereum Classic), and $208,441.63 for the new Ethereum. The court explained that neither party committed fraud, but the contract was ambiguous because it did not mention the cryptocurrencies. And the court resolved the ambiguity by first concluding the agreement did not cover the cryptocurrencies, and then dividing them evenly.

After the court resolved the remaining disputes between the parties related to child support and other fees and expenses, August appealed. On appeal, he argued that the trial court erred when it denied his motion for partial summary judgment, when it awarded Christi half the value of the cryptocurrencies, when it denied his summary judgment on a child support modification claim, when it made various expert-related rulings, and when it ordered August to pay a portion of Christi's attorney and expert fees. A unanimous Court of Appeals panel reversed in part and affirmed in part through a published opinion. *Wohlt v. Wohlt*, 222 N.E.3d 964, 976 (Ind. Ct. App. 2023). The panel reversed the summary judgment denial regarding cryptocurrency ownership, holding that the property settlement agreement unambiguously awarded the cryptocurrencies to August. *Id.* at 971, 973. It affirmed the trial court on the fee issues, holding that August "waived the majority of his claims regarding the trial court's award of expert witness and attorney's fees and that he . . . failed to demonstrate the merit of any preserved claims." *Id.* at 976. The court found the remaining issues moot. *Id.* at 975 n.2.

Christi petitioned for transfer to this Court, which we now grant through a separate order, vacating the Court of Appeals' opinion under Appellate Rule 58(A).

## Standard of Review

Our review focuses on the trial court's order denying August's motion for partial summary judgment to resolve the cryptocurrency ownership. When we review a summary judgment decision, we apply the same standard as the trial court. *Red Lobster Rests. LLC v. Fricke*, 234 N.E.3d 159, 165 (Ind. 2024). Summary judgment is proper only when the designated evidence shows no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* We construe all facts and reasonable inferences in the nonmovant's favor. *Id.*

## Discussion and Decision

Courts often resolve disputes about how to interpret property settlement agreements, *Ryan v. Ryan*, 972 N.E.2d 359, 361–62 (Ind. 2012), but the Indiana Code generally forbids courts from modifying those agreements unless: (1) an agreement authorizes the court to modify it; (2) the parties agree post-decree to modify their settlement agreement; or (3) the agreement is tainted by fraud, Ind. Code § 31-15-2-17(c); I.C. § 31-15-7-9.1(a). Christi sought an award equivalent to half the value of the disputed cryptocurrencies, so she had to show that either: the parties' agreement transferred ownership of half the cryptocurrencies to her; the agreement did not cover the cryptocurrencies, leaving it to the trial court to divide them outside the agreement; or one of the exceptions to the general prohibition against courts modifying property settlement agreements applied so that the trial court could award her ownership. In Section I below we explain why we agree with August that the parties' agreement unambiguously awarded him the cryptocurrencies, and in Section II we explain why we decline to apply any exception that would allow a court to modify the parties' agreement.

# I. The parties' agreement that August would retain "all" the company's assets unambiguously included the cryptocurrencies.

The trial court concluded that (1) the parties' agreement was ambiguous because they forgot about the cryptocurrencies when dividing their assets, and (2) the court should resolve that ambiguity by finding the parties reached no agreement about who should own the cryptocurrencies. The court then divided the assets by awarding Christi half their value. But August argues the trial court was mistaken at the first step because there is nothing ambiguous about the parties' agreement to award him "all" of the company's assets except for a few pieces of technology they agreed Christi would retain. And as we explain next, ordinary principles of contract interpretation lead us to agree with him.

## A. Contract Principles

Property settlement agreements are governed by the same rules of construction as other contracts. *Ryan*, 972 N.E.2d at 363–64. The task is to determine and implement the parties' intent when they entered the contract. *Decker v. Star Fin. Grp., Inc.*, 204 N.E.3d 918, 920 (Ind. 2023). And to do that, courts start with the language of the parties' agreement. *Id.* If the contract's terms are unambiguous, then they are conclusive of the parties' intent, and courts give the contract its plain meaning. *Id.* at 920–21; *Ryan*, 972 N.E.2d at 364. Thus, when reviewing an unambiguous written contract, courts look only to that document, staying within its four corners. *U.S. Automatic Sprinkler Corp. v. Erie Ins. Exch.*, 204 N.E.3d 215, 223 (Ind. 2023). The interpretation of a property settlement agreement is generally appropriate for summary judgment because the interpretation of a contract is generally a question of law. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008) (stating that the interpretation of a property settlement agreement is a question of law); *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 574 (Ind. 2007) (stating that the interpretation of a written contract is a question of law, which is "appropriate for summary judgment").

On the other hand, if a contract's terms are ambiguous, inconsistent, or uncertain, its interpretation is no longer a question of law but one of fact. *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind. 1990). In that case, the trier-of-fact must determine the facts required to construe the contract. *Id.* And to do that, the factfinder must look outside the contract's four corners to parol (or extrinsic) evidence. *Id.* A contract is not ambiguous simply because the parties disagree about the proper interpretation of its terms. *G&G Oil Co. of Ind., Inc. v. Cont'l W. Ins.*, 165 N.E.3d 82, 87 (Ind. 2021). Instead, for an ambiguity to exist, the contract must be subject to more than one reasonable interpretation. *Id.*

Applying these principles to the property settlement agreement here, we conclude the parties' agreement is unambiguous.

## B.   Wohlt Property Settlement Agreement

We conclude the Wohlt agreement is unambiguous because the word "all" is not reasonably susceptible to multiple interpretations in this context. And to the extent the term might reflect a mistake, there is no claim for relief based on the doctrine of mutual mistake.

### 1.   Interpreting the Agreement

"It is difficult . . . to overemphasize the finality of a property settlement agreement, particularly when the parties expressly desire that finality." 15 Ind. Prac., Family Law § 10:10 (2023) (emphasis omitted); *see generally* 10A Ind. Law Encyc. Divorce § 93 (2024) ("A strong policy favors the finality of marital-property divisions, whether the court approves the terms of settlement and agreement reached by parties or the court divides the property."). There are a few reasons.

To begin, there is the "traditional notion[ ] of finality" for all cases, which reflects "the axiom that parties are not entitled to 'a second bite at the apple.'" *Rohrer v. Rohrer*, 734 N.E.2d 1077, 1082 (Ind. Ct. App. 2000). That concern is acute for marital property division. Property division requires considering both assets and liabilities, so the later "adjustment of one asset or liability may require the adjustment of another to avoid an

inequitable result or may require the reconsideration of the entire division of property." *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461 (Ind. Ct. App. 1993). The legislature has also recognized that finality "promote[s] the amicable settlements of disputes." I.C. § 31-15-2-17(a). That is because parties will more likely resolve their disputes by negotiation if they trust that the other side can't later turn to a court to change the deal the parties struck. And that is especially important for dissolution proceedings given the "vexatious litigation which often accompanies the dissolution of a marriage." *Dusenberry*, 625 N.E.2d at 461.

Here, the parties repeatedly expressed that they desired finality through their property settlement agreement. Their agreement's introductory recitals explained that they were resolving "their respective rights in connection with *any and all issues whatsoever* and *any and all rights and claims* which either of them has against the other." Appellant's App. Vol. 2 at 53 (emphases added). Then, the first substantive provision of their agreement—Section 1.1, titled "Issues Settled"—explained: "The subject matter of this Agreement is the settlement of *all of the respective rights* of the Husband and Wife arising in or outside the marital relationship to *all things, actions, and property*, whether real, personal or mixed, now in their joint or separate names or possession in which either or both has any direct or indirect interest." *Id.* (emphases added).

They then turned to dividing their property in Article II of their agreement, agreeing that August would retain "all" of Echo Systems' property with a few exceptions that do not apply to cryptocurrency. *Id.* at 59.

> Section 2.10.  Business – Echo Systems, Inc..  The parties agree to close the business within thirty (30) days of this Agreement and shall cooperate with one another to ensure the business is closed expeditiously. Any expenses associated with the termination and close of this business shall be paid from the business checking account. To the extent closing costs exceed the money in the account, the parties shall divide such costs equally. **Husband shall retain all assets of the business, except for the following items: Wife's Mac computer and**

**printer, iPhone, iPad and laptop.** Husband shall retain all business credit cards and indemnify and hold Wife harmless thereon. Wife shall remove her iPhone and iPad and her mother's phone from the business AT&T account. Husband shall pay the outstanding bill due to AT&T which will auto debit from the discover card.

*Id.* (emphasis added). The parties also included a catch-all provision for any "property of every nature" that they didn't identify in their agreement, agreeing that any such property "now owned by either Husband or Wife shall become the separate and exclusive property of the party now owning it." *Id.* at 57.

There is only one reasonable way to interpret these provisions. The term "all" means "the whole number or sum of." *All*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/all [https://perma.cc/ZP5D-ET7T] (last visited Nov. 21, 2024). So when the parties agreed that they were settling their "respective rights" to "all" of the marital "property," they conveyed that they were dividing the whole of their property—they weren't leaving anything out. Appellant's App. Vol. 2 at 53. And by transferring "all" of Echo Systems' property to August, *id.* at 59, the parties included the company's cryptocurrencies because that was part of the whole of the company's assets, *see id.* at 36 (trial court findings that the "cryptocurrency assets originated with EchoFS," that "both parties owned an interest in EchoFS," and that "Section 2.10 applies to these assets").

But the trial court saw it differently. Concluding that the parties' settlement agreement is ambiguous, the trial court saw this case as similar to *Dewbrew v. Dewbrew*, 849 N.E.2d 636, 645–46 (Ind. Ct. App. 2006). In that case, a divided Court of Appeals panel held that a settlement agreement was ambiguous because it was "silent as to the division" of the "most significant marital assets," including the marital residence and the husband's businesses. *Id.* This case is not like *Dewbrew*, though, because the settlement agreement here is not silent on how to divide Echo Systems' assets. The agreement speaks directly to that question, saying that "all" the property was transferred to August, with exceptions not

relevant here. Appellant's App. Vol. 2 at 59. The fact that the parties forgot that "all" the assets would include cryptocurrencies does not render the phrase "all" susceptible to multiple meanings. The term therefore remains unambiguous.

If the parties had wished to create a separate disposition scheme for property they had forgotten, they could have done so. One way would be to specifically identify in the agreement (or as an attachment to the agreement) all property they were dividing with a separate provision addressing any later-remembered property. Another would be to agree that the court could modify their agreement post-decree to divide forgotten assets. I.C. § 31-15-2-17(c) ("The disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, *except as the agreement prescribes* or the parties subsequently consent." (emphasis added)). Or parties can incentivize each other "to thoroughly research and disclose their holdings by providing in their agreement that any subsequently-discovered property of one will revert, in whole or in part, to the other." 15 Ind. Prac., Family Law § 10:12.

But the parties didn't take that approach here. They instead reasonably chose the common approach of using catch-all phrasing throughout their agreement, which left no property uncovered and left no uncertainty. *See* Appellant's App. Vol. 2 at 54–56, 57 (using catch-all language when addressing the parties' personal property and "[o]ther property"). And that approach best accomplished their stated desire for the property settlement agreement to resolve all issues between them with finality.

Of course, as this case demonstrates, there is a tradeoff. By using this sort of catch-all approach to ensure finality, the parties risked that their agreement might include some assets they weren't thinking of. But taking a different approach to ensure they could later revisit overlooked assets wouldn't be cost-free; that approach would risk the parties having to revisit issues through contentious, costly litigation and maybe even revisit their entire agreement. There is risk either way. So we must leave it to the parties to choose which approach and which risks they wish to take, and then we must honor those choices.

Because the parties unambiguously agreed to transfer "all" of Echo Systems' property to August, he was entitled to judgment in his favor confirming that he owned the cryptocurrencies.

## 2. Mutual Mistake

When analyzing whether it makes a difference that the parties forgot about the cryptocurrencies, the trial court and Christi seem to conflate contractual ambiguity with a mutual mistake. Indeed, the trial court began its analysis by explaining that "[w]hat we have [here] is an error made by both parties." *Id.* at 34. Under the doctrine of mutual mistake, "[w]here both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Wilkin v. 1st Source Bank*, 548 N.E.2d 170, 172 (Ind. Ct. App. 1990). For example, in *Wilkin*, a bank sold real estate to the Wilkins, and when they complained after the closing about clutter on the premises, the parties agreed the Wilkins could keep any personal property they found if they cleaned the property themselves. *Id.* at 171. What neither side realized was that the property included valuable art, which led our Court of Appeals to hold that, based on a mutual mistake, there was no contract to sell the art. *Id.* at 172.

Christi is making an analogous argument, reasoning that the property settlement agreement was based on a similar mutual mistake, with neither side realizing that Echo Systems' assets included valuable cryptocurrencies. If this were simply a matter of Christi or the trial court affixing the wrong label—"ambiguity" instead of "mutual mistake"—we could affirm the trial court's order because we can affirm on any basis supported by the record. *See Markey v. Est. of Markey*, 38 N.E.3d 1003, 1006–07 (Ind. 2015). But this is not simply a matter of mislabeling.

It is too late for Christi to raise a mutual mistake claim. She was reminded of, and raised concerns about, the forgotten cryptocurrencies outside of Trial Rule 60(B)(1)'s one-year time limit for seeking relief based

on a mistake. *See* Ind. Trial Rule 60(B).[1] And even if the claim had been timely, it is unclear what relief, if any, Christi should obtain. For example, the parties have not litigated whether the appropriate remedy is reformation or rescission. *See Williamson v. U.S. Bank Nat'l Ass'n*, 55 N.E.3d 906, 911–12 (Ind. Ct. App. 2016) (recognizing reformation and rescission as remedies for mutual mistake); *see also* 27 Williston on Contracts § 70:32 (4th ed. 2024) (same). And they have not litigated whether the mistake was material enough to the bargain to require relief, which in turn may depend on another question the parties haven't addressed: whether a court should evaluate materiality in the context of the entire settlement agreement or instead only as it relates to the business assets. *See Kesling v. Kesling*, 967 N.E.2d 66, 78 (Ind. Ct. App. 2012) ("It is not enough that both parties are mistaken about any fact; rather, the mistaken fact complained of must be one that is of the essence of the agreement, the sine qua non, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." (quotations and emphasis omitted)), *trans. denied*.

We therefore cannot decide whether any relief might be warranted based on mutual mistake. This case was instead framed as one about contractual ambiguity. And like the Court of Appeals, we hold that the fact that the parties forgot about the cryptocurrencies does not render their agreement to transfer "all" of Echo Systems' property to August ambiguous. Appellant's App. Vol. 2 at 59.

---

[1] Parties also sometimes invoke the doctrine of mutual mistake through a declaratory judgment action. *See, e.g.*, *Elway Co., LLP v. Champlain Cap. Partners*, 114 N.E.3d 1, 4 (Ind. Ct. App. 2018); *Carr Dev. Grp., LLC v. Town of N. Webster*, 899 N.E.2d 12, 13 (Ind. Ct. App. 2008); *Hybarger v. Am. States Ins.*, 498 N.E.2d 1015, 1017 (Ind. Ct. App. 1986); *J.F. New & Assocs., Inc. v. Int'l Union of Operating Eng'rs, Loc. 150, ALF-CIO*, No. 3:14-CV-1418 RLM, 2015 WL 1455258, at *1 (N.D. Ind. Mar. 30, 2015).

## II. The trial court did not have the authority to modify the parties' agreement.

Since we conclude the parties' agreement unambiguously transferred ownership of the cryptocurrencies to August, the only way the trial court could award some or all of them to Christi would be to modify the parties' agreement. And the court could do that only if the agreement authorized that modification, if the parties agreed post-decree to allow the court to modify their agreement, or if the agreement was tainted by fraud. I.C. § 31-15-2-17(c); I.C. § 31-15-7-9.1(a). But the trial court did not purport to modify the parties' agreement, and Christi did not argue in her appellee's brief that any of the exceptions to the general prohibition on courts modifying property settlement agreements apply. So we decline to apply any exceptions here.

The dissent suggests a different approach, concluding we should apply the fraud exception. The dissent would hold that August constructively defrauded Christi and then, on that basis, affirm the trial court's order denying August's motion for partial summary judgment and its order awarding Christi half the value of the cryptocurrencies.

Fraud may be actual or constructive, and the difference is that constructive fraud does not require an intent to deceive. *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind. 1991). Constructive fraud's five elements are: (1) the defendant owed a duty of candor to the plaintiff based on their relationship; (2) the defendant breached that duty by either making a material misrepresentation of a past or existing fact or by remaining silent despite a duty to speak; (3) the plaintiff reasonably relied on the statement or omission; (4) the misrepresentation proximately caused the plaintiff injury; and (5) the defendant gained an advantage at the plaintiff's expense through the misrepresentation. *See In re Scahill*, 767 N.E.2d 976, 979 (Ind. 2002) (identifying the elements of constructive fraud). The dissent reads the parties' agreement as ambiguous as to whether it imposed on August a duty to disclose the cryptocurrencies he had forgotten, resolves that ambiguity in Christi's favor after considering extrinsic evidence, and then concludes Christi was constructively defrauded.

For a few reasons, we decline to affirm the judgment on that basis. To start, the dissent's argument is not one Christi made in her appellee's brief, which doesn't even mention fraud. And we typically limit our review to the arguments the parties make in their principal appellate brief. *See, e.g., Land v. IU Credit Union*, 226 N.E.3d 194, 198 n.4 (Ind. 2024) (holding that the appellee waived an argument by omitting it from the appellee's brief); *French v. State*, 778 N.E.2d 816, 825–26 (Ind. 2002) (holding that the appellant waived an argument by omitting it from the appellant's brief).

Christi didn't request relief based on fraud in the trial court either. She first filed a Verified Motion to Address Asset Omitted from the Marital Estate and Child Support Matters. That motion didn't mention fraud and didn't identify any legal authority for the court to divide the cryptocurrencies. Instead, it presumed the parties would agree to divide the assets and would disagree only about how to divide them.[2] But then Christi learned August would not concede the court should divide the assets, so a few months later she filed Petitioner's Request for Relief. That motion didn't mention fraud either. And while it did generally cite Trial Rule 60(B), it didn't mention which Rule 60(B) provision it was invoking.

The only time Christi invoked constructive fraud in the trial court was when she opposed August's motion for partial summary judgment, arguing there were disputed issues of material fact about whether August defrauded Christi. But invoking constructive fraud as a basis for defeating summary judgment is not the same as seeking relief on that basis. To seek relief based on constructive fraud, Christi would need to identify a procedural vehicle through which the trial court could grant that relief.

---

[2] At times, August has been amenable to dividing the cryptocurrencies either by agreement or through a court order if that division reflected their value around the time of the property settlement, but the parties were never able to reach an agreement about how to divide the assets. Christi argues that August's prior positions now judicially estop him from disputing that she is entitled to some portion of the assets. Judicial estoppel prevents "litigants from prevailing on contradictory positions in the same or subsequent proceedings." *Red Lobster Rests.*, 234 N.E.3d at 169. The doctrine doesn't apply here because August never *prevailed* on a contradictory position.

While she generally cited Trial Rule 60(B), that rule requires a movant pursuing a constructive fraud theory to file the motion within a year of the judgment, which Christi didn't do because she wasn't reminded of the cryptocurrencies until more than a year had passed. *See Jahangirizadeh v. Pazouki*, 27 N.E.3d 1178, 1184 (Ind. Ct. App. 2015) ("To the extent Pazouki may have been less-than-forthright regarding her assets—assuming Jahangirizadeh's allegations to be true—this is the type of 'ordinary' fraud that must be subject to the one-year time limit of Trial Rule 60(B)(3)."); *see also* Reply in Support of Transfer at 3 ("Wife does not dispute that she did not file [her Trial Rule 60(B) motion] within one year.").

The dissent avoids this one-year limitation with another new argument: rather than relying on Trial Rule 60(B), Christi should have relied on Indiana Code section 31-15-7-9.1(b), which gives parties six years to seek a property settlement modification based on fraud. That *might* have been a winning argument if Christi made it, but she didn't, and it isn't clear whether that is a winning argument. The dissent doesn't cite any cases reaching the same conclusion, and the only cases we found addressing the question either (a) rejected the argument because, as here, the statute wasn't cited in the trial court, or (b) merely observed that it isn't clear whether the deadline in the rule or the deadline in the statute trumps. *Jahangirizadeh*, 27 N.E.3d at 1181 n.2 (declining to consider the statutory argument or to decide whether the statute or rule governed because the appellant did not cite the statute in the trial court); *Rothschild v. Devos*, 757 N.E.2d 219, 223 (Ind. Ct. App. 2001) (concluding the appellant's fraud claim was governed either by the one-year limit in Trial Rule 60(B) or the six-year limit in Indiana Code section 31-15-7-9.1(b), but declining to decide which rule governed because the claim was timely either way). One commentator has suggested that Trial Rule 60(B)(3)'s one-year limit would trump the six-year statutory limit, although that analysis doesn't consider our most recent authority addressing conflicts between statutes and court rules. *See* 15 Ind. Prac., Family Law § 10:12 ("This conflict raises the often-recurring issue of rule-statute conflict, in which case the Supreme Court has repeatedly held that rules trump statutes."); *Mellowitz v. Ball State Univ.*, 221 N.E.3d 1214, 1222–23 (Ind. 2023) ( "[W]hen the legislature enacts laws with procedural means to achieve substantive

policy objectives beyond the orderly dispatch of judicial business, we strive to work in a spirit of cooperation between the otherwise independent branches of our government." (quotations omitted)).

Although Christi has never argued that the statute applies, and we have never decided whether it applies in circumstances like this, the dissent would excuse waiver and decide the question without the benefit of the parties litigating the question because of the amount of money at stake. *Post*, at 3. But the stakes are just as high for August as they are for Christi. And it would be unfair to order him to pay hundreds of thousands of dollars (for assets worth around $18,000 at the time of the property settlement) based on a theory Christi never pled and never proved after invoking a statute she never cited along with the dissent's new argument that no court or secondary authority has ever agreed with and to which August has never had an opportunity to respond.

Even if we were inclined to excuse all these layers of waiver, we are still not equipped to evaluate an unpled constructive fraud theory in the first instance on appeal because we are not a fact-finding body. And if we were to treat this case as having been tried on a constructive fraud theory, then we would have to defer to the trial court's assessment of the facts for the mixed questions of law and fact related to Christi's reliance on August's failure to remind her about the cryptocurrencies. *See, e.g.*, *Waterfield v. Waterfield*, 61 N.E.3d 314, 323 (Ind. Ct. App. 2016) (explaining that the "right to rely is more difficult to determine" because it is "bound up with the duty of an individual to be diligent in safeguarding [their] interests" (quotations and brackets omitted)), *trans. denied*; *Dawson v. Hummer*, 649 N.E.2d 653, 663 (Ind. Ct. App. 1995) ("As noted, constructive fraud may be found where one party takes unconscionable advantage of his dominant position in a confidential or fiduciary relationship. Furthermore, whether a confidential relationship exists is one of fact to be determined by a finder of fact."); *Riehle v. Moore*, 601 N.E.2d 365, 372 (Ind. Ct. App. 1992) ("The evidence is thus sufficient to support the trial court's finding of fraud, and we will not attempt to reweigh the evidence merely because Riehle believes the trial court incorrectly struck the balance at trial."), *trans. denied*.

Although Christi never asked the trial court to award her relief based on constructive fraud, the trial court nevertheless concluded that "as the evidence developed during the hearing, it [was] clear neither party committed fraud." Appellant's App. Vol. 2 at 34. One reason that was clear to the trial court was that "[t]he evidence is undisputed that both Husband and Wife knew they had purchased cryptocurrency during the marriage," and Christi "testified she knew at one time they had [the cryptocurrencies]" before she later forgot. *Id.* at 32. We have no basis for supplanting the trial court's view of the evidence with our own. And we can't, as the dissent proposes, affirm the trial court by first rejecting its conclusion that there was no fraud, then weighing extrinsic evidence ourselves to impose a disclosure duty on August, and then further weighing the evidence ourselves to conclude Christi's reliance on an omission was reasonable and that she was defrauded. After all, "[o]ur function is not to sit as a trial court, but rather to review and correct errors of law and to accept the facts as they are presented so long as probative evidence supports them." *Melloh v. Gladis*, 309 N.E.2d 433, 440 (Ind. 1974).

In sum, we decline to affirm the judgment based on a trial court's authority to modify a property settlement procured through fraud because the trial court didn't purport to exercise that authority, Christi didn't request that the judgment be affirmed on that basis, and the record doesn't support affirming on that basis.

## Conclusion

For these reasons, we reverse the trial court's order denying August's motion for partial summary judgment on the issue of his ownership of the cryptocurrencies. Under Appellate Rule 58(A)(2), we also summarily affirm footnote 2 and Section II of the Court of Appeals' opinion, which addressed the remaining issues on appeal.

Rush, C.J., and Massa and Slaughter, JJ., concur.
Goff, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT
Ralph E. Dowling
Dowling Law Office
Muncie, Indiana

ATTORNEY FOR APPELLEE
Amy O. Carson
Massillamany Jeter & Carson, LLP
Fishers, Indiana

**Goff, J., dissenting.**

I respectfully dissent from the Court's opinion. In my view, the property-settlement agreement (Agreement) distributing "all" assets of the business was ambiguous as a matter of law, and we should defer to the trial court's interpretation of the Agreement awarding Wife half the value of the cryptocurrencies. Wife could have also prevailed on her constructive-fraud claim—purported waiver notwithstanding. I would further hold that the trial court reasonably divided the post-dissolution value of the coins.

## I. The property-settlement agreement is ambiguous as to distribution of the cryptocurrencies.

This case comes before us on Husband's motion for summary judgment. When we review a summary-judgment decision, we apply the same standard as the trial court. *Red Lobster Rest. LLC v. Fricke*, 234 N.E.3d 159, 165 (Ind. 2024). Summary judgment is proper only when after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

Courts interpret settlement agreements using ordinary contract principles. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). Courts interpret contracts with the goal of giving effect to the parties' intent. *Id.* A contract is ambiguous if there is more than one reasonable interpretation of its terms. *G&G Oil Co. of Ind., Inc. v. Cont'l W. Ins.*, 165 N.E.3d 82, 87 (Ind. 2021). Whether a contract is ambiguous is a question of law. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008). If a contract's terms are ambiguous and its interpretation requires extrinsic evidence, then the contract's construction is a question of fact. *Johnson*, 920 N.E.2d at 256.

Here, the Agreement between Husband and Wife provided that "Husband shall retain all assets of the business, except for the following

items: Wife's Mac computer and printer, iPhone, iPad and laptop."
Appellant's App. Vol. 2, p. 33. However, when entering this Agreement,
both Husband and Wife forgot about the cryptocurrencies at issue. In
*Dewbrew v. Dewbrew*, 849 N.E.2d 636, 646 (Ind. Ct. App. 2006), the Court of
Appeals held that a property-settlement agreement was ambiguous where
the agreement was silent as to the division of the "most significant marital
assets" such as the marital residence and two businesses. Here, the
cryptocurrencies were valued at about $18,000 at the time of the parties'
mediation and increased to almost $450,000. Given the parties' annual
incomes (estimated at $112,000 for Husband and $62,000 for Wife),
Appellant's App. Vol. 2, p. 41, the value of the cryptocurrencies makes
them significant assets in the marriage. Indeed, the highly experienced
and respected trial judge who heard the case certainly thought so. *See id.*
at 35 (citing *Dewbrew* as analogous precedent). As such, the parties likely
would not have intended to include the cryptocurrencies in the term "all
assets of the business" had they remembered them.

Because the Agreement was ambiguous as a matter of law, the trial
court was correct to deny the Husband's motion for summary judgment
while construing it in favor of Wife as the non-moving party. And because
the construction of an ambiguous contract is a question of fact, I would
defer to the trial court's construction of the Agreement awarding half the
value of the disputed cryptocurrencies to Wife. Indiana Code section 31-
15-7-5 calls for a presumptive equal division of marital property between
the parties. It was reasonable for the trial court to divide the property
equally instead of awarding all the property to Husband and
subsequently modifying child support to reflect Husband's increased
income.

## II.  Wife could prevail on her constructive-fraud claim.

Generally, a trial court may not revoke or modify a property-settlement
agreement incorporated in a dissolution decree. I.C. § 31-15-2-17(c); I.C. §
31-15-7-9.1(a). Exceptions to this bar apply when the agreement allows
for—or when both parties consent to—the modification, I.C. § 31-15-2-

17(c), or "in case of fraud," I.C. § 31-15-7-9.1(a). Here, Wife alleged in her verified petition to divide the cryptocurrencies that Husband had failed to disclose those assets. And in response to Husband's summary-judgment motion, she clarified her claim that Husband had committed constructive fraud by failing to disclose those assets before entering into the Agreement. The trial court denied that Husband committed any fraud but made no findings on the point, making it unclear if it found no actual fraud or no constructive fraud.

The Court summarily disposes of Wife's constructive-fraud claim, finding it insufficiently developed because she failed to identify specific grounds for relief in her Rule 60(B) motion, because she filed her motion beyond the Rule's one-year deadline, and because she failed to argue fraud in her appellee's brief. *Ante*, at 14–15.

I find these reasons unpersuasive.

To begin with, Husband directly responded to Wife's failure-to-disclose arguments on appeal **without** invoking waiver, prompting the Court of Appeals to address the issue on the merits. Given Husband's arguments on appeal, I would elect to proceed as the Court of Appeals did. *See Spells v. State*, 225 N.E.3d 767, 771 n.5 (Ind. 2024) (exercising discretion to address otherwise waived issues given the State's decision to address those issues without arguing for waiver).

Second, while Wife's constructive-fraud claim may have been untimely under Trial Rule 60(B), the statute governing revocation or modification of a property-settlement agreement expressly allows a party to allege fraud within **six years** after the court issues its dissolution decree. I.C. § 31-15-7-9.1(b). To be sure, Wife's constructive-fraud claim relied exclusively on Rule 60(B), arguably waiving any right she had to invoke the extended period under the statute. *See Jahangirizadeh v. Pazouki*, 27 N.E.3d 1178, 1181 n.2 (Ind. Ct. App. 2015) (declining to review allegations of fraud under this statutory provision where husband "relied solely upon Trial Rule 60(B)"). But given this Court's general preference to "decide cases on their merits" rather than dispose of them because of procedural or "technical errors," *Williams v. State*, 253 Ind. 316, 318, 253 N.E.2d 242, 243–44 (1969), I would excuse waiver in these circumstances, especially considering the

amount of money at stake and the effect this decision will ultimately have on the parties' respective child-support obligations. Furthermore, Husband discovered the cryptocurrencies shortly after the mediation but failed to disclose them for over a year. He had adequate notice that Wife may pursue a constructive-fraud claim against him.

Waiver aside, Wife could prevail on her constructive-fraud claim.

"Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud." *Ehle v. Ehle*, 737 N.E.2d 429, 434 (Ind. Ct. App. 2000) (quoting *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1315 (Ind. Ct. App. 1993)). To demonstrate constructive fraud, Wife would have to establish the following elements: (1) a duty owed to her by Husband, (2) a violation of that duty by material misrepresentation of fact or by remaining silent despite a duty to speak, (3) reliance by the Wife, (4) a resulting injury, and (5) an advantage gained by the Husband. *See id.* To prevail on her claim, Wife need not establish Husband's bad-faith intent to defraud. *See id.*

The Agreement here expressly waived discovery and certified that the parties deemed their own inquiries adequate "to be fully informed" and that they possessed "full and adequate knowledge" of the relevant financial information. Appellant's App. Vol. 2, pp. 70–72. Superficially, then, the Agreement seems to waive any duty to disclose. However, immediately following the waiver-and-certification language, the Agreement goes on to state that "[e]ach party represents to the other that they have relied on the full and complete disclosure of the other person upon entering into this Agreement." *Id.* at 72 (italics omitted). This language doesn't plainly state that the parties assumed a duty to disclose. *Cf. Berg v. Berg*, 170 N.E.3d 224, 230 (Ind. 2021) (discussing agreement under which "[e]ach of the parties further represent one to the other that all assets and debts owned or owed by the parties, either individually or jointly, have been correctly and truly revealed to the other and reflected in this agreement"). But it suggests that their knowledge of all "relevant" financial information depended on disclosures made to each other. At the very least, it's not entirely clear what this language means, either alone or

in context, effectively rendering it ambiguous. And when an agreement is deemed ambiguous, extrinsic evidence becomes admissible to discern the parties' intent. *Pohl v. Pohl*, 15 N.E.3d 1006, 1009 (Ind. 2014).

Husband and Wife's joint Waiver of Final Hearing noted that the Agreement had been entered "after full disclosure" of assets. Appellee's Supp. App. Vol. 2, p. 3. That admission, in my view, supports Wife's interpretation of the Agreement as requiring full disclosure by the respective parties. As to the facts of the matter, Husband conceded that the Ethereum coins were stored on a digital wallet located on a hard drive in his home and the Bitcoins in a personal account, both protected by passwords to which only he was privy. Assuming the Agreement imposed a duty to disclose, and given that only Husband had access to the coins, which he failed to disclose, a fact-finder could determine Wife has established the elements of constructive fraud.

## III.   The trial court properly relied on the assets' post-dissolution value.

Having concluded that the trial court properly modified the disposition decree based on an ambiguity in the Agreement and that Wife could have prevailed on her constructive-fraud claim, I would also hold that the trial court reasonably relied on the post-dissolution value of the coins.

Generally, a dissolution court may value marital assets on "any date between the date of filing the dissolution petition and the date of the hearing." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). This rule allows the court to allocate "the risk of change in the value of that asset between the date of valuation and date of the hearing." *Id.* at 103. Generally, the "hearing" is the final dissolution hearing.

That general rule makes little sense when the assets must be valued and divided for the first time after the change in value has already occurred. Then, the "date of the hearing" should refer, not to the final dissolution hearing, but to the date on which the issue of the belatedly disclosed assets is actually heard. The question is one of fairness and workability, rather than simply of allocating risk. The original Ethereum coins, owned

before Wife filed for dissolution, went through a transformation—something like a stock split, whereby possession of an old Ethereum coin entitled one to receive a new Ethereum coin. The new coins then ballooned in value before they were even disclosed. Had they been disclosed originally, we do not know how Husband and Wife would have divided them, or whether Wife would have held hers until the "Hard Fork." *See* Appellant's App. Vol. 2, p. 38. It would be completely impractical to divide almost $450,000 as if it were only around $15,000–18,000. The dissolution court could not, for instance, fairly award $450,000 to one party and compensate the other with merely $7,500 in cash. *See Ehle*, 737 N.E.2d at 437 (dividing post-dissolution value after a stock split, as to do otherwise "would allow [h]usband to unfairly profit from the delay in transfer" that occurred due to a disagreement).

# Conclusion

In my view, the Agreement was ambiguous, and we must defer to the trial court's construction of the Agreement. The trial court is in the best position to interpret the contract considering the parties' intent and the impact on the family. In addition, Wife could have prevailed on her constructive-fraud claim—purported waiver notwithstanding. I would further hold that the trial court reasonably divided the post-dissolution value of the coins. To award Husband the entire value of the omitted cryptocurrencies would lead to inequitable results and provide him with a financial windfall. For these reasons, I respectfully dissent from the Court's opinion.